**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JOSEPH A. LAROSKI, JR.,** *JUDGE*

| | |
|---|---|
| ZOETIS SERVICES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Court No.  22-00056 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**JUDGMENT ORDER**

     Having considered Plaintiff's motion for summary judgment, Defendant's response, and all other papers and proceedings in this action, and after due deliberation, it is hereby —

     **ORDERED** that Plaintiff's motion for summary judgment be and hereby is granted; and it is further

     **ORDERED** that the responsible United States Customs and Border Protection officials shall reliquidate the entries subject to this action, classifying the subject CTC Concentrate under subheading 2941.30.00 of the *Harmonized Tariff Schedule of the United States*, and refunding the excess duties collected on the merchandise to the Plaintiff, with lawful interest.

<br>

                                       _____
                                        **JUDGE**

DATED: _____
      New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JOSEPH A. LAROSKI, JR.,** *JUDGE*

| | | |
|---|---|---|
| ZOETIS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Court No.  22-00056 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to U.S. Court of International Trade Rules 7(g) and 56(a), Plaintiff, through its undersigned attorneys, respectfully moves for summary judgment in its favor. A judicial decision on this motion would dispose of this case on its merits.

Plaintiff believes there is no genuine issue of material fact in this case and that summary judgment is appropriate. Plaintiff submits the attached Memorandum of Law.

Respectfully submitted:

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Zoetis Services LLC
320 S. Canal Street
Suite 3300
Chicago, IL 60606
Telephone (312) 569-1000

By:    /s/ Wm. Randolph Rucker

Dated: March 19, 2025          Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JOSEPH A. LAROSKI, JR., *JUDGE***

| | |
|---|---|
| ZOETIS SERVICES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Court No.  22-00056 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

In accordance with Rule 56.3 of the Rules of the United States Court of International Trade, Plaintiff, Zoetis Services LLC ("Zoetis"), identifies the following material facts for which it contends there are no genuine issues to be tried.[1]

1.    The subject CTC Concentrate is a drug. (**Exhibit 1**, Schroeder Dep. Tr. at 43:21, 46:17.)[2]

2.    CTC Concentrate is essentially Chlortetracycline, the only active ingredient in this product. (**Exhibit 2**, Pl.'s Resp. to Def.'s First Set of Interrog. Nos. 3-6 ("ROG Response").)

3.    CTC Concentrate is subject to U.S. Food and Drug Administration ("FDA") requirements. (*Id*. at No. 3; **Exhibit 3**, Guidance for Industry #213 [ZOETIS00422-00439] ("GFI # 213); Ex. 1, Schroeder Dep. Tr. at 39:11-40:24.)

---

[1] A separate Joint Statement of Undisputed Facts was filed on March 14, 2025 (ECF No. 38, hereafter "JSUF") and is incorporated by reference herein.

[2] Nat'l Library of Medicine, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=82fff0a7-f2a4-4004-88b5-8e31563f1f0e (last visited Mar. 19, 2025).

4.      FDA requires "veterinary oversight in the use of antimicrobial new animal drugs," such as CTC Concentrate, "to assure their appropriate and judicious use." (Ex. 3, GFI # 213.)

5.      The Type A Medicated Articles ("Zoetis's CTC Products") made with CTC Concentrate are drugs regulated by the FDA. (Ex. 1, Schroeder Dep. Tr. at 14:2-9; 21 C.F.R. § 558.3.)

6.      FDA recognizes Type A Medicated Articles as a drug, not a feed. (21 C.F.R. § 558.3; **Exhibit 4**, *Understanding the Past and the Present of Medicated Feeds,* Dr. Daniel Benz and Dr. Dragan Momcilovic, Center for Veterinary Medicine, Food and Drug Admin. (Oct. 2014) [ZOETIS00804-00838], also available at https://www.fda.gov/media/90158/download (last visited Sept. 22, 2023).)

7.      CTC Concentrate cannot be fed directly to animals. (Ex. 1, Schroeder Dep. Tr. at 100:2-6) ("It would make animals sick. It could kill them. But the tetracycline chlortetracycline antibiotic would cause pretty severe diarrhea and sickness where they would -- they go off feed and they just won't eat it, because it's too concentrated").)

8.      The CTC Concentrate is used exclusively to manufacture Type-A Medicated Articles. (Ex. 2, ROG Response Nos. 15, 19.)

9.      The label on the 750-kilogram bags containing the imported CTC Concentrate states "FOR MANUFACTURING, PROCESSING OR REPACKING ONLY." (**Exhibit 5**, Chlortetracycline Photographs [ZOETIS01013-01014].)

10.      Type A Medicated Articles are not safe to be fed directly to animals. (Ex. 1, Schroeder Dep. Tr. at 44:2-3 ("Type A are a small quantity that are not safe to be fed to animals.").)

11.      Type A Medicated Articles are intended solely for use in the manufacture of another Type A Medicated Article or a Type B or Type C Medicated Feed. (Ex. 2, ROG Response at No.

8; 21 C.F.R. § 558.3(b)(2).)

12.    Type A Medicated Article drugs have to be administered in animal feed. (Ex. 1, Schroeder Dep. Tr. at 29:19-24; **Exhibit 6**, *Draft Guidance for Industry #292, Chemistry, Manufacturing, and Controls Considerations for Type A Medicated Articles*, U.S. Dep't of Health and Human Services, Food and Drug Admin., Center for Veterinary Medicine (CVM) (June 2024) [ZOETIS00926-00936] ("Type A medicated articles contain new animal drugs and provide for administration of these drugs in animal feed.").

13.    FDA restricts the use of Chlortetracycline and related Type A Medicated Articles in animal feed to "uses that are associated with the treatment, control, and prevention of specific diseases to be therapeutic uses that are necessary for assuring the health of food-producing animals." (Ex. 2, at No. 19; Ex. 3.)

14.    The chemical formula for Chlortetracycline is $C_{22}H_{23}ClN_2O_8$. (Ex. 2, ROG Response at No. 3; **Exhibit 7**, Jinhe Material Safety Data Sheet [ZOETIS00446-00448]; https://pubchem.ncbi.nlm.nih.gov/compound/54675777#section=SMILES (last visited Mar. 17, 2025).)

15.    The Chemical Abstract Service (CAS) number for Chlortetracycline is 57-62-5. (Ex. 2, ROG Response at Nos. 3, 5; **Exhibit 8**, Zoetis Material Safety Data Sheet [ZOETIS00375-00381]; Ex. 7.); https://www.cas.org/cas-data/cas-registry (last visited Mar. 17, 2025); https://pubchem.ncbi.nlm.nih.gov/compound/54675777#section=SMILES (last visited Mar. 17, 2025).)

16.    CTC Concentrate does not have a separate CAS number because it is deemed a "mixture." (Ex. 2, ROG Response No. 5; **Exhibit 9**, Pucheng Safety Data Sheet [ZOETIS00918-00925]; Ex. 8.)

17.    The CTC Concentrate contains Chlortetracycline, mycelial cake, microbial cells, residual nutrients, other fermentation components, and metabolic products. (Ex. 2, ROG Response No. 3.)

18.    During the manufacture of CTC Concentrate, calcium carbonate is mixed into the fermentation broth. (*Id.*; Ex. 1, Schroeder Dep. Tr. at 47:5-14 ("[Y]ou take that CTC in the liquid broth, and you then complex it with calcium carbonate and you make this Chlortetracycline calcium complex, and it makes it stable so it doesn't degrade when you mix it into feed – CTC Concentrate is more stable than plain CTC"), 51:8-13; **Exhibit 9**, Process Flow Diagram [ZOETIS00668 at 00670].)

19.    Zoetis is a drug manufacturer. (Ex. 1, Schroeder Dep. Tr. at 21:13, 27:24-25.)

20.    Zoetis does not manufacture Type C Medicated Feeds with the CTC Concentrate. (*Id.* at 21.)

21.    It is the Type C Medicated Feed that improves the health and growth of livestock, not the CTC Concentrate or Type A Medicated Articles. (Ex. 2, ROG Response No. 18.)

22.    Zoetis is the end-user of the CTC Concentrate in its imported condition. (*Id.* at No. 12.)

23.    There are only five companies that make and sell Type A Medicated Feed Articles, including Zoetis and Pharmgate. (Ex. 1, Schroeder Dep. Tr. at 41:1-7.)

24.    Zoetis has specific sizing requirements for CTC Concentrate purposes of making its Type A Medicated Articles. (**Exhibit 11**, Tauren Dep. Tr. at 12:21-15:5.)

25.    Zoetis has specific flowability requirements for CTC Concentrate for purposes of making Type A Medicated Articles. (*Id.* at 18:2-20:30.)

26.    Chlortetracycline active pharmaceutical ingredients have different grades and the

subject CTC Concentrate is "feed grade." (*Id*. at 26:7-9.)

27.    CTC Concentrate can have varying antibiotic potency because fermentation is not an exact science. (Ex. 1, Schroeder Dep. Tr. at 32:13-34:11.)

28.    In its imported condition, the CTC Concentrate is not suitable for use in animal feed because the potency range exceeds those that can be safely administered to livestock. (Ex. 2, ROG Response Nos. 12, 15.)

29.    Using CTC Concentrate to manufacture Type-A Medicated Articles is economically practicable and a central component of Zoetis' business model for the production of certain Type-A Medicated Articles. (*Id*. at No. 16.)

30.    Importing CTC Concentrate is the most efficient and cost-effective method for manufacturing Zoetis's Type-A Medicated Articles. (*Id.*)

31.    Jinhe Biotechnology Co., Ltd. ("Jinhe") does not directly market, advertise, or sell the CTC Concentrate to Zoetis; but instead, markets and sells this product to Zoetis via a third-party broker who provides the product specifications. (*Id.* at No. 20.)

32.    Jinhe advertises CTC Concentrate as "a broad-spectrum antimicrobial drug with a long history of use in animals which is usually administered in the feed for prophylactic purposes. (*See* http://www.jinhe.com/en/product/Index/133 (last visited Mar. 19, 2025).)

33.    Jinhe manufactured the subject CTC Concentrate pursuant to Veterinary Master File (VMF) 5468 (005-658) that was approved by the FDA's Center for Veterinary Medicine. (**Exhibit 12**, Pl.'s Amended Resp. to Def.'s First Set of Interrog. No. 5 ("Amended ROG Response"); https://fda.report/media/71383/VMF-holder-type_0.pdf (last visited Mar. 17, 2025).)

34.    Jinhe's VMF for CTC Concentrate is a Type II VMF that contains manufacturing information for this drug substance. (**Exhibit 13**, Jinhe VMF Approval Letter;

https://www.fda.gov/animal-veterinary/development-approval-process/veterinary-master-files

(last          visited          Mar.          17,          2025).)

https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ahUKEwjNivr3

mJGMAxW1D1kFHWd_BGAQFnoECBkQAQ&url=https%3A%2F%2Fwww.fda.gov%2Fmedi

a%2F100998%2Fdownload&usg=AOvVaw0ZB2NtgIIn6APF9whnHcnt&opi=89978449     (last

visited Mar. 17, 2025).)

35.     VMF 005-468 controls the manufacture and composition of the CTC Concentrate

and the Type A Medicated Articles made therefrom. (**Exhibit 14**, ZOETIS01021 (Pharmgate

Letter of Authorization); (**Exhibit 15**, Letter from Pharmgate Submissions to FDA

[ZOETIS00940]; Ex. 12 at No. 5.)

36.     Pharmgate, LLC is a majority-owned subsidiary of Jinhe. (**Exhibit 25** ("Jinhe

Biotechnology Co. Ltd. has a majority holding position in Pharmgate Inc.").)

37.     HRL H325604 was issued in response to an internal advice request initiated on

behalf of Pharmgate. (**Exhibit 16**, HRL H325604.)

38.     CBP has applied the decision in HRL H325604 to classify "chlortetracycline feed

grade concentrate and chlortetracycline hydrochloride" imported by Jinhe under HTSUS

subheading 2941.30.0000. (**Exhibit 26** ("Please note that in addition to the entries listed in this

Summons, Protest No. 35122110057 covered a number of other entries as to which CBP granted

this protest and which are not included in this action.").)

39.     The CTC Concentrate does not contain product of animal origin. (**Exhibit 17**,

[ZOETIS00365]; **Exhibit 18**, Bill of Lading [ZOETIS00778-00780]; **Exhibit 19**, Invoices

[ZOETIS00781-00786].)

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JOSEPH A. LAROSKI, JR., *JUDGE***

| | | |
|---|---|---|
| ZOETIS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Court No.  22-00056 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

By:     /s/ Wm. Randolph Rucker

Dated: March 19, 2025          Wm. Randolph Rucker

**FAEGRE DRINKER BIDDLE & REATH LLP**

Attorneys for Plaintiff
Zoetis Services, LLC
320 S. Canal Street
Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

I.      ISSUE PRESENTED ........................................................................... 2

II.     SUMMARY OF ARGUMENT .......................................................... 2

III.    VERBATIM PASSAGES FROM THE HTSUS ................................. 3

        A.      Tariff Classification Applied by CBP at Liquidation ................. 3

        B.      Tariff Classification Claimed by Zoetis ..................................... 3

        C.      General Rules of Interpretation and Additional U.S. Rules of
                Interpretation Pertinent to this Case ........................................... 3

        D.      Relative Section or Chapter Notes .............................................. 4

IV.     STATEMENT OF FACTS ................................................................... 4

        A.      Background ................................................................................... 4

        B.      Product Information ..................................................................... 5

V.      APPLICABLE LEGAL STANDARDS OF REVIEW ........................ 7

        A.      Summary Judgment Is Appropriate in this Case ........................ 7

ARGUMENT ..................................................................................................... 8

        A.      The CTC Concentrate Is Properly Classified in Heading 2941 ... 9

                1.      The Government Has Already Classified CTC Concentrate
                        in HTSUS Heading 2941 ............................................... 14

                2.      The Court Should Give Deference to CBP's Classification
                        Decision in HRL H325604 ............................................. 17

        B.      Alternatively, the CTC Concentrate Is Classifiable in Heading
                3003 .......................................................................................... 24

                1.      Interpretation of the Terms of Heading 3003 ................. 24

                2.      The CTC Concentrate Is a Medicament with Therapeutic and
                        Prophylactic Uses ........................................................ 26

                3.      The CTC Concentrate Is Principally Used as a Medicament
                        for Therapeutic and Prophylactic Purposes ................... 27

                4.      The CTC Concentrate Is Classified Under HTSUS Heading
                        3003 Pursuant to GRI 1 ................................................. 31

                5.      The CTC Concentrate Is Not Excluded from HTSUS
                        Heading 3003 by the Section or Chapter Notes .............. 32

                6.      The CTC Concentrate Is Not Excluded from Heading 3003
                        by the Guidance of the ENs ........................................... 33

# TABLE OF CONTENTS
### (continued)

**Page**

7.  The CTC Concentrate Is Properly Classified in HTSUS Subheading 3003.20.00 ........................................................... 35

C.  The CTC Concentrate Is Not Properly Classified in HTSUS Heading 2309 ........................................................................ 36

1.  The CTC Concentrate Is Specified in a Heading Outside Heading 2309 .......................................................................... 36

2.  The CTC Concentrate Is Not a Preparation of a Kind Used in Animal Feeding .................................................................. 36

3.  The CTC Concentrate Has Not Lost the Character of Chlortetracycline ........................................................................... 40

D.  GRI 3 Supports Classification of the CTC Concentrate in Heading 3003 when Compared to Heading 2309 ......................... 41

1.  The CTC Concentrate Would Be Classified in Heading 3003 Pursuant to GRI 3(a) .......................................................... 41

2.  The CTC Concentrate Would Be Classified in Heading 3003 Pursuant to GRI 3(b) .......................................................... 42

3.  The CTC Concentrate Would Be Classified in Heading 3003 Pursuant to GRI 3(c) .......................................................... 43

CONCLUSION ............................................................................................... 43

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Agatec Corp. v. United States,*
   31 CIT 847 (Ct. Int'l Trade 2007) ............................................................... 9

*Agfa Corp. v. United States,*
   520 F.3d 1326 (Fed. Cir. 2008) ............................................................... 10

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ............................................................... 7

*BASF Corp. v. United States,*
   798 F. Supp. 2d 1353 (Ct. Int'l Trade 2011) ...................................... 26, 27

*Bausch & Lomb, Inc. v. United States,*
   148 F.3d 1363 (Fed. Cir. 1998) ............................................................... 8

*Baxter Healthcare Corp. of P.R. v. United States,*
   182 F.3d 1333 (Fed. Cir. 1999) ......................................................... 9, 17

*Bowen v. Georgetown Univ. Hosp.,*
   488 U.S. 204 (1988) ............................................................... 23

*CamelBak Prods., LLC v. United States,*
   649 F.3d 1361 (Fed. Cir. 2011) ............................................................... 11

*Carl Zeiss, Inc. v. United States,*
   195 F.3d 1375 (Fed. Cir. 1999) ............................................................... 9

*Casio, Inc. v. United States,*
   73 F.3d 1095 (Fed. Cir. 1996) ............................................................... 11

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................................... 7

*GRK Canada, Ltd. v. United States,*
   885 F.3d 1340 (Fed. Cir. 2018) ............................................................... 19

*H. Reisman Corp. v. United States,*
   17 CIT 1260 (1993), *appeal dismissed*, 39 F.3d 1195 (Fed. Cir. 1994) .................................. 38

*Hasbro Indus., Inc. v. United States,*
   879 F.2d 838 (Fed Cir. 1989) ............................................................... 10

*Heartland By-Products, Inc. v. United States,*
   264 F.3d 1126 (Fed. Cir. 2001) ............................................................... 21

*IKO Indus., Ltd. v. United States,*
    105 F.3d 624 (Fed. Cir. 1997) ................................................................. 10, 39

*Inabata Specialty Chems. v. United States,*
    366 F. Supp. 2d 1358 (Ct. Int'l Trade 2005) ................................. 20, 24, 25

*Intercontinental Marble Corp. v. United States,*
    264 F. Supp. 2d 1306 (2003) *aff'd*, 381 F.3d 1169 (Fed. Cir. 2004)....................................... 19

*James Loudon & Co. v. United States,*
    30 Cust. Ct., 67-68 (1953) ........................................................................ 38

*Jewelpak Corp. v. United States,*
    297 F.3d 1326 (Fed. Cir. 2002) ................................................................ 17

*Kahrs Int'l, Inc. v. United States,*
    645 F. Supp. 2d 1251 (Ct. Int'l Trade 2009) .......................................... 17

*Kahrs Int'l, Inc. v. United States,*
    713 F.3d 640 (Fed. Cir. 2013) .................................................................. 22

*Kahrs Intern., Inc. v. United States,*
    791 F.Supp.2d 1228 (Ct. Int'l Trade 2011) ............................................ 37

*Kalle USA, Inc. v. United States,*
    273 F. Supp. 3d 1319 (Ct. Int'l Trade 2017) ....................................... 8, 9

*La Crosse Tech., Ltd. v. United States,*
    723 F.3d 1353 (Fed. Cir. 2013) .............................................................. 9, 10

*Len–Ron Mfg. Co., Inc. v. United States,*
    334 F.3d 1304 (Fed. Cir. 2003) .................................................................. 9

*Len-Ron Mfg. Co. v. United States,*
    118 F. Supp. 2d 1266 .................................................................................. 10

*Lonza, Inc. v. United States,*
    849 F. Supp. 51 (Ct. Int'l Trade 1994), *aff'd*, 46 F.3d 1098 (Fed. Cir. 1995)............. 11, 22, 23

*Millenium Lumber Distrib., Ltd. v. United States,*
    558 F.3d 1326 (Fed. Cir. 2009) .................................................................. 8

*Motorola, Inc. v. United States,*
    436 F.3d 1357 (Fed. Cir. 2006) ................................................................ 17

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
    545 U.S. 967 (2005) ................................................................................... 21

*Nutricia N. Am., Inc. v. United States*,
   2024-1436 ................................................................................................. 34

*Nutricia N. Am., Inc. v. United States*,
   666 F. Supp. 3d 1363 (Ct. Int'l Trade 2023) ....................................... *passim*

*Orlando Food Corp. v. United States*,
   140 F.3d 1437 (Fed. Cir. 1998) ...................................................... 31, 41

*Pillsbury Co. v. United States*,
   431 F.3d 1377 (Fed. Cir. 2005) ................................................................ 8

*Primal Lite, Inc. v. United States*,
   182 F.3d 1362 (Fed. Cir. 1999) .............................................................. 27

*Pulsifer v. United States*,
   601 U.S. 124 (2024) ................................................................................ 25

*Quaker Pet Grp. LLC v. United States*,
   287 F. Supp. 3d 1348 (Ct. Int'l Trade 2018) ......................................... 8

*Rocknel Fastener, Inc. v. United States*,
   267 F.3d 1354 (Fed. Cir. 2001) ......................................................... 9, 22

*Rollerblade, Inc. v. United States*,
   116 F. Supp. 2d 1247 (Ct. Int'l Trade 2000), *aff'd* 282 F.3d 1349 (Fed. Cir.
   2002) ....................................................................................................... 35

*Rubie's Costume Co. v. United States*,
   337 F. 3d 1350 (Fed. Cir. 2003) ....................................................... 19, 20

*Russell Stadelman & Co. v. United States*,
   242 F.3d 1044 (Fed. Cir. 2001) .............................................................. 10

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1994) ..................................................................... 19, 20, 21

*Southern Shrimp Alliance v. United States*,
   617 F. Supp. 2d 1334 (Ct. Int'l Trade 2009) ......................................... 19

*Togasaki & Co. v. United States*,
   12 U.S. Cust. App. 463 (C.C.P.A. 1925) .............................................. 36

*Toy Biz, Inc. v. United States*,
   248 F. Supp. 2d 1234 (Ct. Int'l Trade 2003) ....................................... 7, 8

*Under the Weather, LLC v. United States*,
   728 F. Supp. 3d 1337 (Ct. Int'l Trade 2024) ................................ 18, 19, 22

*United States v. Alltransport, Inc.*,
   44 C.C.P.A. 149 (1957) ................................................................................ 25

*United States v. Carborundum Co.*,
   536 F.2d 373 (1976) ..................................................................................... 27

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ........................................................................ 19, 20, 21

*United States v. Wallace*,
   4 U.S. Cust. App. 142 (C.C.P.A. 1913) ....................................................... 37

*Universal Elecs. Inc. v. United States*,
   112 F.3d 488 (Fed. Cir. 1997) ................................................................17, 23

*Vitek Supply Co. v. United States*,
   17 C.I.T. 111 (1993) ................................................................................37, 38

*Warner-Lambert Co. v. United States*,
   341 F. Supp. 2d 1272 (Ct. Int'l Trade 2004) ...................................... *passim*

*Warner-Lambert Co. v. United States*,
   425 F.3d 1381 (Fed Cir. 2005) ..............................................................20, 21

**Statutes, Rules & Regulations**

19 C.F.R. § 177.1(d)(1) ................................................................................... 18

19 C.F.R. § 177.9(a) ........................................................................................ 20

19 C.F.R. § 177.9(b)(1) ................................................................................... 20

21 C.F.R. § 510.3(h) ........................................................................................ 15

21 C.F.R. § 558.3(b)(2) (2022) ....................................................................... 14

21 C.F.R. § 558.6 ............................................................................................. 14

Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) ................... *passim*

19 U.S.C. § 1625 .............................................................................................. 19

19 U.S.C. § 1625(c)(1) ..................................................................................... 20

28 U.S.C. § 1581(a) ........................................................................................... 2

28 U.S.C. § 2639(a)(1) .................................................................................17, 19

516A of the Tariff Act of 1930 ....................................................................... 17

Court of International Trade Rule 56(a) ........................................................................ 7

**Other Authorities**

Animal, Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary/animal (last visited Mar. 18, 2025) .................................... 37

Beverage, Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary/beverage (last visited Mar. 18, 2025) ................................. 31

Chlortetracycline, Nat'l Library of Medicine,
    https://pubchem.ncbi.nlm.nih.gov/compound/54675777 (last visited Mar. 18,
    2025) ......................................................................................................................... 12

Chlortetracycline, Nat'l Library of Medicine,
    https://pubchem.ncbi.nlm.nih.gov/compound/54675777#section=2D-Structure
    (last visited Mar. 18, 2024) ...................................................................................... 13

Deracin, Pharmgate, https://pharmgate.com/usa/deracin/ (last visited Mar. 18,
    2025) ......................................................................................................................... 16

Food and Drug Admin. (Dec. 2013), https://www.fda.gov/regulatory-
    information/search-fda-guidance-documents/cvm-gfi-213-new-animal-drugs-
    and-new-animal-drug-combination-products-administered-or-medicated-feed ....................... 5

Food and Drug Admin., https://www.fda.gov/science-research/fda-science-
    forum/simultaneous-determination-tetracycline-oxytetracycline-and-
    chlortetracycline-using-liquid (last visited Mar. 18, 2025) ...................................... 12

Food and Drug Admin., https://www.fda.gov/science-research/fda-science-
    forum/simultaneous-determination-tetracycline-oxytetracycline-and-
    chlortetracycline-using-liquid (last visited Mar. 18, 2025) (last visited Mar.
    18, 2025) ............................................................................................................. 25, 26

Food, Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary/food (last visited Mar. 16, 2025) ....................................... 32

*Harmonized Tariff Schedule of the United States* ("HTSUS") ............................... *passim*

Jinhe, http://www.jinhe.com/en/product/Index/133 (last accessed Mar. 19, 2025) ................ 29, 30

Oxford English Dictionary (2d ed. 1989) .................................................................. 11

Vegetable, Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary/vegetable .......................................................................... 36

Veterinary Master File, Food and Drug Admin., https://www.fda.gov/animal-
veterinary/development-approval-process/veterinary-master-files#database
(last visited Mar. 18, 2025) ........................................................................................................... 5

Zoetis, https://www.zoetis.com/our-company/our-story/about-us (last visited Mar.
18, 2025) ......................................................................................................................................... 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., *JUDGE*

| | |
|---|---|
| ZOETIS SERVICES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Court No.  22-00056 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case concerns the proper tariff classification of certain Chlortetracycline Concentrate Feed Grade Powder ("CTC Concentrate") imported by Plaintiff Zoetis Services LLC ("Zoetis"). (Joint Statement of Undisputed Facts, ECF No. 38 (hereafter "JSUF") at ¶¶ 1, 5.) U.S. Customs and Border Protection ("CBP") liquidated the entries of CTC Concentrate ("Subject Entries") under subheading 2309.90.1050 of the *Harmonized Tariff Schedule of the United States* ("HTSUS"), which provides for "*Preparations of a kind used in animal feeding: Other: Mixed feeds or mixed ingredients: Other.*"[3] (*Id.* at ¶ 2; 19 U.S.C. § 1202.) Zoetis contends that the CTC Concentrate is properly classified as antibiotics under HTSUS subheading 2941.30.00, which provides for "*Antibiotics: Tetracyclines and their derivatives; salts thereof*" or, alternatively, under HTSUS subheading 3003.20.00 as "*Medicaments (excluding goods of heading 3003, 3005 or 3006) consisting of two or more constituents which have been mixed together for therapeutic or*

---

[3] Although all citations are to the HTSUS 2020 edition, the relevant heading language did not change from 2019-2020.

*prophylactic uses, not put up in measured doses or in forms or packings for retail sale: ... Other, containing antibiotics.*" Zoetis timely protested CBP's liquidation of the Subject Entries and paid all duties and fees due. (*Id.* at ¶ 3.) CBP subsequently denied Zoetis's protests and Zoetis has timely filed this action. (*Id.*)

The U.S. Court of International Trade has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a). There are no issues of disputed material facts to be resolved by trial and, therefore, disposition by summary judgment is appropriate. For the reasons discussed below, Zoetis respectfully requests that this Court grant summary judgment for Plaintiff and order Defendant to reliquidate the Subject Entries to reclassify the CTC Concentrate under HTSUS subheading 2941.30.00 (or, alternatively, HTSUS subheading 3003.20.00) and refund excess duties paid, with interest as provided by law.

## I.     ISSUE PRESENTED

Whether the CTC Concentrate is correctly classified as antibiotics under HTSUS heading 2941 or, alternatively, as a medicaments under HTSUS heading 3003, as claimed by Zoetis, or as preparations of a kind used for animal feeding under HTSUS heading 2309, as liquidated.

## II.     SUMMARY OF ARGUMENT

Based on the factual and legal considerations discussed herein, Zoetis asserts that the CTC Concentrate is properly classified under HTSUS subheading 2941.30.00 as "*Antibiotics: Tetracyclines and their derivatives; salts thereof*" or, alternatively, under HTSUS subheading 3003.20.00 as "*Medicaments (excluding goods of heading 3003, 3005 or 3006) consisting of two or more constituents which have been mixed together for therapeutic or prophylactic uses, not put up in measured doses or in forms or packings for retail sale: ... Other, containing antibiotics.*"

### III.    VERBATIM PASSAGES FROM THE HTSUS

**A.    Tariff Classification Applied by CBP at Liquidation**

At liquidation of the Subject Entries, CBP applied HTSUS subheading 2309.90.1050, which provides as follows:

| | |
|---|---|
| 2309 | Preparations of a kind used for animal feeding: |
| 2309.90 | Other: |
| 2309.90.10 | Mixed feed or mixed ingredients: |
| 2309.90.1050 | Other. |

**B.    Tariff Classification Claimed by Zoetis**

Zoetis claims that the CTC Concentrate is properly classified in HTSUS subheading 2941.30.0000, which provides as follows:

| | |
|---|---|
| 2941 | Antibiotics |
| 2941.30.0000 | Tetracyclines and their derivatives; salts thereof |

or, alternatively, in HTSUS subheading 3003.20.0000, which provides as follows:

| | |
|---|---|
| 3003 | Medicaments (excluding goods of heading 3003, 3005 or 3006) consisting of two or more constituents which have been mixed together for therapeutic or prophylactic uses, not put up in measured doses or in forms or packings for retail sale: |
| 3003.20.0000 | Other, containing antibiotics. |

**C.    General Rules of Interpretation and Additional U.S. Rules of Interpretation Pertinent to this Case**

GRI 1.  The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions: …

GRI 3(a). The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in

mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

GRI 3(b). Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

GRI 3(c). When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

AUSRI 1(a). In the absence of special language or context which otherwise requires--(a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.

**D.    Relative Section or Chapter Notes**

HTSUS Chapter 23, Note 1: Heading 2309 includes products of a kind used in animal feeding, not specified or included elsewhere, obtained by processing vegetable or animal materials to such an extent that they have lost the essential characteristics of the original material, other than vegetable waste, vegetable residues and byproducts of such processing.

HTSUS Chapter 30, Note 1(a): This chapter does not cover: ... (a) Foods or beverages (such as dietetic, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), other than nutritional preparations for intravenous administration (section IV).

## IV.    STATEMENT OF FACTS

**A.    Background**

Headquartered in Parsippany, New Jersey, Zoetis discovers, develops, manufactures and commercializes vaccines, medicines, diagnostics and other technologies for companion animals and livestock.[4] Zoetis was the importer of record of the entries at issue in this action (the "Subject Entries") and has standing to bring this action. (Amended Complaint ("Compl.") & Answer to

---

[4] *See* Zoetis, https://www.zoetis.com/our-company/our-story/about-us (last visited Mar. 18, 2025).

Amended Complaint ("Answer") at ¶ 2, ECF Nos. 24 & 26.) The Subject Entries cover importations made at the Port of Chicago during the period of 2019 through 2020. (JSUF at ¶ 1.) Plaintiff has paid all liquidated duties and fees for the Subject Entries and timely filed this action. (*Id.* at ¶ 4.)

The product imported under the Subject Entries is CTC Concentrate, a material containing the broad-spectrum antibiotic, Chlortetracycline (CAS No. 57-62-5). (JSUF at ¶¶ 6-7; PSMF at ¶ 15.) At the time of entry, Zoetis declared the CTC Concentrate under HTSUS subheading 2309.90.1050. 19 U.S.C. § 1202; ECF No. 11 (Protests and Entries Received). CBP liquidated the CTC Concentrate under this tariff provision. (JSUF at ¶ 2.) Zoetis timely filed administrative protests in relation to the Subject Entries, asserting they were classifiable under HTSUS subheading 3003.20.0000, which provides for "*Medicaments ...."* (*Id.* at ¶ 3.)

## B.    Product Information

The CTC Concentrate was manufactured by Jinhe Biotechnology Co., Ltd. ("Jinhe"). (JSUF ¶ 5; PSMF ¶¶ 33-35.) In its imported condition, the CTC Concentrate consists of Chlortetracycline (the only active ingredient), mycelial cake, microbial cells, residual nutrients, other fermentation components, and metabolic products. (JSUF ¶ 6; PSMF at ¶¶ 2, 17.) CTC Concentrate does not have a separate CAS number from Chlortetracycline because it is deemed a "mixture." (PSMF at ¶ 16.) Jinhe is the holder of the Veterinary Master File ("VMF") for the CTC Concentrate (VMF 005-468), which provides information on the manufacture and composition of this product. (*Id.* ¶¶ 33-35.)[5]

The imported CTC Concentrate is subject to FDA requirements and is a recognized

---

[5] *See also* Veterinary Master File, Food and Drug Admin., https://www.fda.gov/animal-veterinary/development-approval-process/veterinary-master-files#database (last visited Mar. 18, 2025).

antibiotic drug. (JSUF ¶¶ 6-7; PSMF ¶¶ 1-4; *see also*, Ex. 3, GFI #213.)[6] The CTC Concentrate is a fine brown powder or granular substance, and is imported in bags weighing 750 kilograms ("kg") per bag. (JSUF ¶ 14.) The CTC Concentrate subject to this litigation had an antibiotic potency between 23.8% and 24.7%. (*Id.* ¶ 6.)

Chlortetracycline is a broad spectrum antibiotic. (JSUF ¶ 7.) The Chlortetracycline in the CTC Concentrate is the result of a fermentation process where certain complexing agents (*i.e.*, calcium carbonate in the form of hydrated lime) are mixed into and compound with the Chlortetracycline at stable pH ranges to facilitate the post-importation processing and veterinarian directed delivery to livestock. (JSUF ¶¶ 8-13; PSMF ¶ 18.)

The imported CTC Concentrate is used to manufacture Type A Medicated Articles that are used to treat and control a wide range of respiratory and enteric diseases in livestock, including bacterial pneumonia, bacterial enteritis, anaplasmosis, and other diseases. (JSUF at ¶¶ 20, 31; PSMF ¶¶ 8, 13.) These Type A Medicated Articles are drugs administered to animals through animal feed (*i.e.*, in products recognized as Type B and Type C Medicated Feeds by the FDA). (JSUF at ¶¶ 20, 31; PSMF ¶¶ 5, 11-12.) However, the CTC Concentrate and the Type A Medicated Articles made therefrom are not animal feed and are not safe to be directly fed to animals. (JSUF at ¶¶ 15-18; PSMF ¶¶ 5-7, 10, 28.) FDA restricts the use of CTC Concentrate in animal feed to "uses that are associated with the treatment, control, and prevention of specific diseases to be therapeutic uses that are necessary for assuring the health of food-producing animals." (PSMF ¶ 13.)

After post-importation processes, Zoetis markets and sells the finished Type A Medicated

---

[6]     Guidance for Industry #213, Food and Drug Admin. (Dec. 2013), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cvm-gfi-213-new-animal-drugs-and-new-animal-drug-combination-products-administered-or-medicated-feed.

Article products made with CTC Concentrate as Aureomycin® (NADA 48-761), Aureomix® S40/40 (NADA 35-688), AUREO S 700® (NADA 35-805), and ChlorMax® (NADA 46-699). (JSUF at ¶ 21.) These finished products are drugs regulated by the FDA.[7] (*Id.* at ¶ 20; PSMF ¶¶ 5-6.) Zoetis sells these products to feed mills (directly or through distributors) where they are formulated into Type-C Medicated Feeds for multiple livestock animal species. (JSUF at ¶ 33.)

FDA requires "veterinary oversight in the use of antimicrobial new animal drugs," such as CTC Concentrate, "to assure their appropriate and judicious use." (PSMF ¶ 4.) Further, the medicated feeds that contain the CTC Concentrate require a veterinary feed directive (VFD) issued by a licensed veterinarian prior to their use in order to be legally fed to animals. (JSUF at ¶ 30.)

## V.    APPLICABLE LEGAL STANDARDS OF REVIEW

### A.    Summary Judgment Is Appropriate in this Case

Pursuant to U.S. Court of International Trade Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In tariff classification cases, "summary judgment is appropriate when there is no genuine dispute as to ... what the merchandise is ... or as to its use." *Toy Biz, Inc. v. United States*, 248 F. Supp. 2d 1234, 1241 (Ct. Int'l Trade 2003) (internal citations omitted). Summary judgment is appropriate for Plaintiff here because there is no genuine dispute about what the subject CTC Concentrate is or its use in the production of Type A Medicated Articles.

---

[7] Plaintiff notes that, within its protest of the entry at issue in this litigation, it inadvertently (and incorrectly) referred to Type-A Medicated Articles as "Type-A Medicated Feeds." The proper term is "Type A Medicated Articles," which are recognized by the FDA as drugs, not feed.

When there is a dispute over tariff classification, the Court first undertakes the legal question to "construe the relevant classification headings" and then undertakes the factual question to "determine under which of the properly construed tariff terms the merchandise at issue falls." *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). "When there is no factual dispute regarding the merchandise, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions." *Quaker Pet Grp. LLC v. United States*, 287 F. Supp. 3d 1348, 1354 (Ct. Int'l Trade 2018).

The only issue presented here is a question of law pertaining to the proper classification of the CTC Concentrate based on the interpretation of HTSUS headings 2309, 2941, and 3003, as applied to the facts in this case. Pursuant to the terms of the relevant GRIs and HTSUS headings, the CTC Concentrate is properly classified as an antibiotic in heading 2941 or, alternatively, as a medicament in heading 3003. Thus, Zoetis is entitled to summary judgment as a matter of law.

## ARGUMENT

The classification of goods under the HTSUS is governed by the principles set forth in the GRIs and, in the absence of special language or context which requires otherwise, by the Additional U.S. Rules of Interpretation ("AUSRIs"). *Toy Biz*, 248 F. Supp. 2d at 1241. The GRIs are applied in numerical order starting with GRI 1. *Pillsbury Co. v. United States*, 431 F.3d 1377, 1379 (Fed. Cir. 2005). "Under GRI 1, the court must determine the appropriate classification according to the terms of the headings and any relative section or chapter notes" with all terms construed according to their "common commercial meaning." *Millenium Lumber Distrib., Ltd. v. United States*, 558 F.3d 1326, 1328-29 (Fed. Cir. 2009) (citation and internal quotation marks omitted). Chapter and section notes are considered in "classification disputes because they are statutory law, not interpretative rules." *Kalle USA, Inc. v. United States*, 273 F. Supp. 3d 1319, 1326 (Ct. Int'l Trade 2017).

Where there is a dispute as to which of two or more tariff classifications may apply to particular merchandise, the Court should analyze the problem first by construing the relevant classification headings. *Bausch & Lomb*, 148 F.3d at 1365. Per GRI 1, if a heading specifically describes the CTC Concentrate, it should be classified under that heading. *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). Based on a review of properly interpreted terms of the tariff headings at issue, the CTC Concentrate is properly classified as an antibiotic under HTSUS heading 2941 using a GRI 1 analysis or, alternatively, under HTSUS heading 3003 based on GRI 1 or GRI 3.

## A.    The CTC Concentrate Is Properly Classified in Heading 2941

"A product is classifiable under GRI 1 if it is described in whole by a single classification heading or subheading of the HTSUS." *Kalle USA*, 273 F. Supp. 3d at 1327 (internal citations omitted). Certain tariff terms may be defined in the HTSUS. When a tariff term is not defined, "unless there is evidence of contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings." *Id*. at 1326 (citing *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013)); *see also Agatec Corp. v. United States*, 31 CIT 847, 852 (Ct. Int'l Trade 2007) (undefined HTSUS terms "are construed according to their common and commercial meanings, which are presumed to be the same absent contrary legislative intent") (citation omitted). "In ascertaining a term's common meaning, the court may 'consult lexicographic and scientific authorities, dictionaries, and other reliable information' or may rely on its own 'understanding of the terms used.'" *Kalle USA*, 273 F. Supp. 3d at 1326 (citing *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337-38 (Fed. Cir. 1999)); *see also Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356-57 (Fed. Cir. 2001) (same).

Further, the Court may also refer to The Harmonized Commodity Description and Coding System Explanatory Notes ("Explanatory Notes" or "ENs") accompanying a tariff heading. While

the ENs are not controlling legislative history, they are intended to clarify the scope of the HTSUS tariff headings and to offer guidance in their interpretation. *Agatec Corp.*, 31 CIT at 852 (citing *Len–Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003)). While not binding on this Court, the ENs "provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system." *See, e.g., Russell Stadelman & Co. v. United States*, 242 F.3d 1044, 1047 (Fed. Cir. 2001) (citation omitted). As an interpretative supplement to the HTSUS, the ENs may help clarify the scope of an HTSUS provision and offer guidance on its interpretation. *Id*. at 1048. The ENs are "generally indicative of the proper interpretation of a tariff provision." *Agfa Corp. v. United States*, 520 F.3d 1326, 1329-30 (Fed. Cir. 2008) (citation and internal quotation marks omitted). ENs are particularly compelling when they specifically include or exclude an article. *See, e.g., IKO Indus., Ltd. v. United States*, 105 F.3d 624, 625 (Fed. Cir. 1997) (affirming a classification decision "[b]ecause the Explanatory Notes to Chapter 68 specifically exclude asphalted paper").

As noted above, HTSUS heading 2941 provides for "*Antibiotics"* by name. Thus, heading 2941 is an *eo nomine* tariff provision that covers all forms of the named article, including improved forms. *Len-Ron Mfg. Co. v. United States*, 118 F. Supp. 2d 1266, 1281 ("[A]n *eo nomine* designation, with no terms of limitation, will ordinarily include all forms of the named article."); *Hasbro Indus., Inc. v. United States*, 879 F.2d 838, 840 (Fed Cir. 1989) (same). Thus, an antibiotic will remain in this tariff provision even if it is enhanced in some way so long as it retains the essential characteristics of antibiotics. *La Crosse Tech.*, 723 F.3d at 1364–65 (citation omitted) ("Absent limitation or contrary legislative intent, an *eo nomine* provision 'include[s] all forms of the named article[,]' even improved forms."). Only "[w]hen goods are in character or function something other than as described by a specific statutory provision—either more limited or more

diversified—and the difference is significant, then the goods cannot be classified within an *eo nomine* provision pursuant to GRI 1." *Id*. at 1358 (citation and internal quotation marks omitted). Put another way, "we look to whether the subject article is merely an improvement over or whether it is, instead, a change in identity of the article described by the statute." *CamelBak Prods., LLC v. United States,* 649 F.3d 1361, 1365 (Fed. Cir. 2011) (citation omitted). "The criterion is whether the item possess[es] features *substantially in excess* of those within the common meaning of the term." *Id.* (emphasis and alterations in original) (quoting *Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996)).

Since HTSUS heading 2941 is an *eo nomine* provision that broadly covers all antibiotics, "the only prerequisite to classification under Heading 2941 is satisfaction of the criteria embraced by the term 'antibiotics.'" *Lonza, Inc. v. United States,* 849 F. Supp. 51, 60 (Ct. Int'l Trade 1994), *aff'd*, 46 F.3d 1098 (Fed. Cir. 1995). "[T]he defining characteristic of antibiotic substances common to all definitions is the ability to kill or inhibit the growth of microorganisms." *Id.* While the term "antibiotics" is not defined in the HTSUS, the Court in *Lonza* defined "antibiotic" as follows:

> 2. *Injurious to or destructive of living matter, esp. micro-organisms. 3. [A]n antibiotic substance: one of a class of substances produced by living organisms and capable of destroying or inhibiting the growth of micro-organisms; spec. any of these substances used for therapeutic purposes. Also used of synthetic organic compounds having similar properties.* (citing The Oxford English Dictionary (2d ed. 1989)).

> "*A biochemical drug, derived from one or more kinds of microorganisms, which has the ability to (1) inhibit the growth (bacteriostatic agent), or (2) to kill (bactericidal agent) a number of other microorganisms and thus of immense value in treating a number of diseases that result from microbial infection.*" (citing Van Nostrand's Scientific Encyclopedia (7th ed. 1989)).

11

*Id.* at 61-62. Beyond these dictionary definitions, the Court also noted that the expert witnesses in *Lonza* "testified that the commonly accepted meaning of the term 'antibiotic' includes the ability of a substance to kill or inhibit the growth of bacteria." *Id.* at 62.

The Explanatory Notes for heading 2941 provide similar guidance on the antibiotics covered by this heading, stating, in relevant part:

> Antibiotics are substances secreted by living micro-organisms which have the effect of killing other micro-organisms or inhibiting their growth. They are used principally for their powerful inhibitory effect on pathogenic micro-organisms, particularly bacteria or fungi, or in some cases on neoplasms. They can be effective at a concentration of a few micrograms per ml in the blood.

**Exhibit 28**, ENs 2941. The ENs further provide that the antibiotics of heading 2941 include "Tetracyclines and their derivatives, e.g., chlortetracycline (INN), oxytetracycline (INN)*."

It is well-established that Chlortetracycline is an antibiotic. (*See* JSUF at ¶ 7.)[8] Chlortetracycline is the primary component of the CTC Concentrate, which is an active pharmaceutical ingredient ("API") used in the manufacture of Type A Medicated Articles. (JSUF ¶ 20.) These Type A Medicated Articles (Zoetis's CTC Products) are used for the treatment, prevention, and control of a wide range of respiratory and enteric diseases in livestock, such as poultry, swine, and cattle. (*Id.* at ¶ 31.) It is the Chlortetracycline antibiotic in the CTC Concentrate (and ultimately the Type A Medicated Article CTC Products) that performs the function of killing the bacteria that cause disease in livestock. Thus, the CTC Concentrate is prima facie classifiable

---

[8] *See also* <u>Simultaneous determination of tetracycline, oxytetracycline, and chlortetracycline using liquid chromatography tandem mass spectrometry</u>, Food and Drug Admin., <u>https://www.fda.gov/science-research/fda-science-forum/simultaneous-determination-tetracycline-oxytetracycline-and-chlortetracycline-using-liquid</u> (last visited Mar. 18, 2025) ("Tetracyclines are a group of broad-spectrum antibiotic compounds that have a common base structure."); <u>Chlortetracycline</u>, Nat'l Library of Medicine, <u>https://pubchem.ncbi.nlm.nih.gov/compound/54675777</u> (last visited Mar. 18, 2025) ("Chlortetracycline is a member of the class of tetracyclines.").

as an antibiotic in heading 2941.

HTSUS Chapter 29, Note 1(a) provides, in relevant part, "the headings of this chapter apply only to: … (a) Separately chemically defined organic compounds, whether or not containing impurities." *Id.* Chapter Note 1 of the General ENs for Chapter 29 further explains that "[a] separate chemically defined compound is a substance which consists of one molecular species (e.g., covalent or ionic) whose composition is defined by a constant ratio of elements and can be represented by a definitive structural diagram." *Id.* Based on this guidance, the CTC Concentrate is properly classified in HTSUS heading 2941 even though it is not 100% pure Chlortetracycline, as the separate chemically defined compounds of this heading may contain impurities. Per the General ENs to Chapter 29,

> [t]he term "impurities" applies exclusively to substances whose presence in the single chemical compound results solely and directly from the manufacturing process (including purification). These substances may result from any of the factors involved in the process and are principally the following:
>
> (a)  Unconverted starting materials.
> (b)  Impurities present in the starting materials.
> (c)  Reagents used in the manufacturing process (including purification).
> (d)  By-products.

*Id.*

The CTC Concentrate consists of the single chemical compound, Chlortetracycline (Molecular Formula $C_{22}H_{23}ClN_2O_8$). (JSUF ¶ 13; PSMF¶ 14.) The composition of Chlortetracycline is defined by a constant ratio of elements as represented in the following structural diagram.[9]

---

[9] *See supra* note 8, <u>Chlortetracycline</u>, Nat'l Library of Medicine, <u>https://pubchem.ncbi.nlm.nih.gov/compound/54675777#section=2D-Structure</u> (last visited Mar. 18, 2024).

The "impurities" present in the CTC Concentrate are solely the result of the fermentation manufacturing process (*e.g.*, the mycelial cake, microbial cells, residual nutrients, other fermentation components, and metabolic products consist of leftover starting materials and by-products from the fermentation process, including the addition of calcium carbonate, a recognized reagent). (Ex. 2, ROG Response at No. 3.) Therefore, the CTC Concentrate is properly classified as an antibiotic in HTSUS heading 2941. "*Tetracyclines and their derivatives; salts thereof*" are specifically included in HTSUS subheading 2941.30, which is the proper tariff classification for the subject CTC Concentrate.[10]

## 1.    The Government Has Already Classified CTC Concentrate in HTSUS Heading 2941

In CBP Headquarters Ruling Letter ("HRL") H325604 (Aug. 31, 2023), CBP held that a Chlortetracycline Feed Grade Concentrate ("CTC-FG") product imported by Pharmgate, LLC ("Pharmgate") is properly classified under HTSUS subheading 2941.30.00. (Ex. 16.) The CTC-FG in HRL H325604 is the same product at issue in this litigation.

---

[10] CBP has previously recognized that Chlortetracycline is a tetracycline antibiotic properly classified under HTSUS subheading 2941.30. *See, e.g.,* Exhibit 20, New York Ruling Letter ("NYRL") 840979 (May 18, 1989) (classifying Chlortetracycline under HTSUS subheading 2941.30.00).

CBP noted the CTC-FG at issue in HRL H325604 was described as "a broad-spectrum substance that is used in the manufacture of veterinary drug products, namely Veterinary Feed Directive (VFD) Type A medicated articles such as Pharmgate's Pennchlor and Deracin products." (*Id.* at 15.) CBP also highlighted the following:

- CTC-FG was approved by the FDA's Center for Veterinary Medicine under Veterinary Master File ("VMF") 005-468;
- CTC-FG is a Type A Medicated Article according to 21 C.F.R. § 558.3(b)(2) (2022);
- 21 C.F.R. § 558.6 provides that Type A Medicated Articles containing Chlortetracycline require a Veterinary Feed Directive ("VFD") issued by a licensed veterinarian for use in making medicated feeds.[11]

(*Id.* at 9.) The Pharmgate CTC-FG was composed of the active ingredient Chlortetracycline at 22-24% and was described as a "fine brown powder or granular substance." (*Id.* at 2.)

CBP's conclusion in HRL H325604 was based, in part, on its finding that "[m]edicinal feed preparations of a kind designed to be used by veterinarians are excluded from heading 2309." (*Id.*) CBP cited the heading 2309 ENs as support, noting that preparations classifiable in heading 2309 "should not be confused with certain preparations for veterinary uses," which "are generally identifiable by the medicinal nature and much higher concentration of the active [antibiotic] substance." (*Id.* at 12 (alteration in original).) CBP's conclusion in HRL H325604 was also based, in part, on the following findings concerning the CTC-FG product:

1. It is "not supplementary feeds or supplementary additives intended to achieve a suitable daily diet as contemplated by heading 2309";
2. It is "not used to make supplementary feeds or complete feeds" and, instead, is "used to produce medicated animal feeds"; and
3. It does "not provide any substantial source of nutrients in the diet of the animal" and, instead, is "manufactured to treat animal diseases and infections."

---

[11] While CBP noted that FDA regulations are not binding on the agency and they are not required to consider other agency regulations when determining tariff classification, CBP recognized "the definitions provided in Title 21 can be instructive when determining commercial definitions of a product." Exhibit 16, at 9 (citations omitted).

(*Id.*)[12]

The subject CTC Concentrate imported by Zoetis is identical in all material respects to the CTC-FG articles described in HRL H325604. Like the CTC-FG product at issue in HRL H325604, the subject CTC-Concentrate is:

- a broad-spectrum antibiotic substance that is used in the manufacture of Type A Medicated Articles (JSUF ¶ 7; Ex. 16, at 2);
- a medicinal preparation of a kind designed to be used by veterinarians that is excluded from heading 2309 (Ex. 12, Amended ROG Response at No. 9; Ex. 16, at 12);
- used to treat and control a wide range of respiratory and enteric diseases in livestock, including anaplasmosis, bacterial enteritis, bacterial pneumonia (JSUF ¶ 31; Ex. 16, at 13);
- <u>not</u> a supplementary feed or supplementary additive intended to achieve a suitable daily diet as contemplated by heading 2309 (JSUF ¶ 15; Ex. 16, at 12);
- <u>not</u> used to make supplementary feeds or complete feeds and, instead, is used in the production of medicated animal feeds; (JSUF ¶ 15; Ex. 16, at 10)
- <u>not</u> a substance that provides any substantial source of nutrients in the diet of the animal and, instead, is manufactured to treat animal diseases and infections (JSUF ¶¶ 17, 31; Ex. 16, at 12);
- a fine brown powder (JSUF ¶ 14; Ex. 16, at 2); and
- approved by the FDA's Center for Veterinary Medicine under VMF 005-468 (PSMF ¶¶ 33-35; Ex. 16, at 9).

Finally, the range of the active ingredient Chlortetracycline in the subject CTC-Concentrate (23.8-24.7%) is essentially identical to the range of the active ingredient Chlortetracycline in the CTC-FG product at issue in HRL H325604 (22-24%), when accounting for variations due to the fermentation manufacturing process. (JSUF ¶ 6; PSMF ¶ 27.)

Pharmgate, the importer of the CTC-FG product at issue in HRL H325604, is the U.S.

---

[12] In HRL H325604, CBP recognized that "[u]nder 21 C.F.R. § 510.3(h) animal feed is defined as: 'an article which is intended for use for food for animals… which is intended for use as a substantial source of nutrients in the diet of the animal, and is not limited to a mixture intended to be the sole ration of the animal.'" Ex. 16, at 9. CBP stated that the term "animal feed" is also defined as "Edible material that is consumed by an animal and contributes energy, nutrients, or both, to the animal's diet." *Id.* Like the Pharmgate CTC-FG, the subject CTC Concentrate does not meet these definitions and is not properly considered animal feed.

subsidiary of Jinhe. (PSMF ¶ 36.)  Jinhe is the manufacturer of the CTC-FG at issue in HRL H325604. (*Id.* ¶ 33.) Jinhe is also the manufacturer of the subject CTC Concentrate that was imported by Plaintiff in this action. (JSUF at ¶ 5; PSMF ¶¶ 33-35.)

The CTC-FG product in HRL H325604 and the subject CTC Concentrate are identical products made by the same manufacturer and used for the same purpose, to produce Type A Medicated Articles. In one particular case, these materials are used to create the same Type A Medicated Article product—*Aureomycin* produced by Zoetis and its generic version *Deracin* produced by Pharmgate.[13] (*Id.* at ¶ 22.) There is no reasonable basis to distinguish the subject CTC Concentrate from the CTC-FG at issue in HRL H325604. Since CBP has already classified an identical CTC feed grade concentrate product in HTSUS 2941 and Zoetis agrees with this tariff classification, we assert that this Court should defer to CBP's prior classification of these goods.

## 2.  The Court Should Give Deference to CBP's Classification Decision in HRL H325604

Generally, CBP classification decisions are presumed correct under 28 U.S.C. § 2639(a)(1) and the burden of proving the classification is erroneous rests on the challenging party.[14] *Jewelpak Corp. v. United States*, 297 F.3d 1326, 1331 (Fed. Cir. 2002) (citing *Baxter*, 182 F.3d at 1337); *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 491-92 (Fed. Cir. 1997) (explaining that "our precedent has long and continuously stated that the decision of Customs is presumed to be correct"). That presumption, however, does not apply to questions of law before the Court. *Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1266 n.15 (Ct. Int'l Trade 2009). However, "[t]he

---

[13] *See also* <u>Deracin</u>, Pharmgate, https://pharmgate.com/usa/deracin/ (last visited Mar. 18, 2025).

[14] "Except as provided in paragraph (2) of this subsection, in any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision." 28 U.S.C. § 2639(a)(1).

presumption of correctness certainly carries force on any *factual* components of a classification decision, such as whether the subject imports fall within the scope of the tariff provision." *Universal Elecs.,* 112 F.3d at 492 n.2; *see also, Motorola, Inc. v. United States*, 436 F.3d 1357, 1362 (Fed. Cir. 2006) (applying the Section 2639 presumption to a factual issue that was determinative of whether goods were classified as hybrid integrated circuits).

There are different CBP actions at issue in this case, the classification assigned to the CTC Concentrate at liquidation, as confirmed by CBP's protest denial, and the tariff classification decision in HRL H325604. CBP's liquidation and protest denial actions are not entitled to deference or a presumption of correctness. First, this Court has recognized a difference between protest determinations and CBP ruling letters. *See Under the Weather, LLC v. United States*, 728 F. Supp. 3d 1337, 1356 (Ct. Int'l Trade 2024) (holding that a "protest approval [which] stated only: 'Protest has been approved based on received documents'" was not an "interpretive ruling or decision" because "[t]hat one sentence statement did not 'interpret[ ] and appl[y] the provisions of the Customs and related laws to a specific set of facts'") (quoting 19 C.F.R. § 177.1(d)(1)). Like the statement in *Under the Weather*, CBP's protest decision in this case contains only a half-sentence comment "IS CONCURS WITH CROSS RULING NY 802423 AND ADDITIONAL DUTIES ARE OWED UNDER SECTION 301." (**Exhibit 21**.) There is also no factual discussion or legal analysis. *Accord Under the Weather*, 728 F. Supp. 3d at 1356 ("The statement did not identify the merchandise, explain the meaning of the relevant tariff subheadings or otherwise provide the interested public with guidance as to Customs' position."). Further, the decision in NYRL 802423 (Oct. 20, 1994) (cited as the "support" for CBP's protest denial) was distinguished and rejected once CBP reviewed the facts for the CTC-FG product in HRL H325604, stating:

> CBP has previously classified products under the category of 'animal food preparations' and 'animal feed premixes.' For example, in New York Ruling Letter

18

('NY') 802423, dated October 20, 1994, CBP classified a similar Chlortetracycline feed grade material ('CTC product') under heading 2309, HTSUS. The CTC product in NY 802423 contained corn starch, glucose, corn-steep liquor, soybean meal, peanut meal, yeast powder, peptone, vegetable oil, added sugar, and starch. As such, the CTC product in NY 802423 fell under the category of an antibiotic additive that supplemented the nutritional value of the animal feed because it contained ingredients which provided nutritional value and sustenance. …

The subject antibiotics are used solely to treat animal diseases and infections and have no nutritional value. Unlike the CTC product in NY 802423 , these products do not contain corn starch, soybean oil, peanut meal, corn meal, corn starch, or similar ingredients found in animal feed. Rather, while the subject products can be added to animal feed they are imported in antibiotic form.

(**Exhibit 22**, at 11, 13.)

CBP's liquidation and protest decision are not "interpretive" decisions as there is no analysis or CBP interpretation of the facts in these agency actions. *See Under the Weather*, 728 F. Supp. 3d at 1355-56 (quoting *Southern Shrimp Alliance v. United States*, 617 F. Supp. 2d 1334, 1356 (Ct. Int'l Trade 2009) for the proposition that "prior interpretive rulings or decisions" (for purposes of 19 U.S.C. § 1625) "will . . . 'bear indicia' of interpretation 'on their face.'"). Thus, these actions do not have any persuasive power. Further, the 28 U.S.C. § 2639(a)(1) presumption does not apply to CBP's liquidation decision when no factual disputes surround the subject merchandise. *Intercontinental Marble Corp. v. United States*, 264 F. Supp. 2d 1306, 1309 n.3 (2003) *aff'd*, 381 F.3d 1169 (Fed. Cir. 2004). There are no material issues of fact in this case and the classification issue is ripe for summary judgment. Accordingly, whether CBP asserts that the tariff classification assessed at liquidation is correct (HTSUS heading 2309) or another classification altogether, no presumption attaches that CBP's asserted classification is correct.

In contrast to CBP's decisions to liquidate the subject CTC Concentrate under HTSUS heading 2903 and deny Zoetis' protest, which are not entitled to a presumption of correctness or deference, the agency's decision in HRL H325604 is entitled to deference. As a general

proposition, CBP's classification rulings are accorded deference in proportion to their power to persuade. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1994) and *GRK Canada, Ltd. v. United States*, 885 F.3d 1340, 1346 (Fed. Cir. 2018) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) and stating the courts "accord deference to Customs' classification rulings relative to the rulings' 'power to persuade'"); *see also Rubie's Costume Co. v. United States*, 337 F. 3d 1350, 1355-56 (Fed. Cir. 2003) (holding that headquarters ruling was entitled to *Skidmore* deference because it "was adopted pursuant to a deliberative notice-and-comment rulemaking process" based on CBP's "specialized experience in classifying goods"). The weight a CBP ruling will be given in a particular case will be "based on 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Warner-Lambert Co. v. United States*, 341 F. Supp. 2d 1272, 1276 (Ct. Int'l Trade 2004) (quoting *Skidmore,* 323 U.S. 134, 140), *aff'd* 425 F.3d 1381 (Fed Cir. 2005). We assert that the determination in HRL H325604 is entitled to a presumption of correctness and should be given judicial deference in this case.

A ruling letter represents CBP's official position "with respect to the particular transaction or issue described therein and is binding on all [Customs] personnel . . . until modified or revoked." 19 C.F.R. § 177.9(a). HRL H325604 has not been modified or revoked and has been in effect for more than 60 days. 19 U.S.C. § 1625(c)(1). Thus, this ruling letter represents CBP's "official position" on the tariff classification of the CTC-FG product and identical CTC feed grade concentrate products. 19 C.F.R. § 177.9(a). Since the subject CTC Concentrate is *identical* to the CTC-FG in HRL H325604, we assert that CBP's decision in that ruling must be adopted to the greatest extent allowable when deciding the classification issue in this case. *See* 19 C.F.R. § 177.9(b)(1) (stating that ruling letters "will be applied … to transactions involving articles …

whose description is identical to the description set forth in the ruling letter").

HRL H325604 is entitled to significant deference under *Skidmore* given the deliberation that went into its publication, the length and thoroughness of its analysis, and the fact that it was not a stark departure from prior agency interpretation of the relevant HTSUS provisions. *See Rubie's Costume*, 337 F.3d at 1357 (applying factors discussed in *Mead* to a ruling letter); *see also Inabata Specialty Chems. v. United States*, 366 F. Supp. 2d 1358, 1363 (Ct. Int'l Trade 2005) (stating that the Court "cannot ignore … Customs' treatment of pain relief medications," among other sources, when determining whether an imported product was a substance "prepared for therapeutic or prophylactic uses"). The fact that CBP's ruling in HRL H325604 differs from the classification assessed at liquidation is not a reason for denying it deference as consistency is just one factor in determining *Skidmore* deference. *Skidmore*, 323 U.S. at 140. The test for how much weight to give to HRL H325604 is whether this ruling has the "power to persuade." *See Heartland By-Products, Inc. v. United States*, 264 F.3d 1126, 1136 (Fed. Cir. 2001) (stating that inconsistency is not itself a basis for denying deference to a ruling that revoked another ruling). *Id.* Further, if an agency changes position and adequately explains the reasons for the change in policy, deference may be appropriate. *Id.* Here, CBP has explained in great detail the basis for classifying CTC concentrate products in heading 2941 in HRL H325604. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (deference is allowable "if the agency adequately explains the reasons for a reversal of policy").

Here, CBP has adequately explained the reasons for its classification decision in HRL H325604, issuing a lengthy ruling that "carefully and convincingly" explains the reasons for the agency's classification decision. *Warner-Lambert Co. v. United States*, 425 F.3d 1381, 1386 (Fed Cir. 2005). This ruling has the power to persuade, and the Court should afford deference. In *Mead*,

21

the Supreme Court explained that CBP rulings may be entitled to *Skidmore* deference based on its "thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight." *Mead*, 533 U.S. at 236. Subsequent decisions have highlighted the application of this principle, such as *Warner-Lambert*, where the court emphasized that "Customs wrote a six-page ruling which carefully and convincingly explained the reasons for the agency's . . . decision." 425 F.3d at 1386. At 15 pages, HRL H325604 is even longer than the ruling at issue in *Warner-Lambert*.

HRL H325604 is a well-reasoned interpretive decision and has the power to persuade, as it is written with great attention to detail, considering specific facts and analyzing every element of the relevant HTSUS headings and possible exclusions to ultimately arrive at a classification decision for the CTC concentrate product at issue. First, the ruling contains a significant amount of factual development and review in its "FACTS" section. Next, it includes a "LAW AND ANALYSIS" section that quotes the HTSUS, applies the GRIs, interprets the terms of the headings, considers the section and chapter notes, as well as the ENs, references prior CBP rulings, case law and other agency regulations, and applies CBP's interpretation of this guidance to the facts at issue. *See Under the Weather*, 728 F. Supp. 3d at 1355-56 ("interpretive rulings or decisions … bear indicia of interpretation on their face"). Finally, HRL H325604 is a "classification directive" that specifically includes the following "HOLDING":

> By application of GRI 1, the Chlortetracycline products, CTC-HCI and CTC-FG are classified under heading 2941, HTSUS, specifically, under subheading 2941.30.00, HTSUS, which provides for: 'Antibiotics: Tetracyclines and their derivatives; salts thereof.'

*Id.* This ruling also, carefully explains why HTSUS heading 2903 **does not** apply to the CTC concentrate product at issue.

Beyond deciding the amount of deference to be afforded to HRL H325604, to grant this

motion the Court must find that, "as a matter of law," Zoetis is entitled to summary judgment in this case. While this Court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms," *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (citations omitted), it has an equal "responsibility to give some deference to Customs' interpretation" when "the classification … is supported by thorough analysis in Customs' publications and decisions," *Rocknel Fastener*, 267 F.3d at 1358. Here the proper meaning of the term "antibiotic" in HTSUS heading 2941 has already been determinatively established in *Lonza* and this definition was applied by CBP when it classified the CTC-FG in this heading. HRL 325064 (citing *Lonza*, 46 F.3d 1098, 1108, for the proposition that the defining characteristic of antibiotic substances "is the ability to kill or inhibit the growth of microorganisms"). Given its reasoning and thoroughness, including application of the relevant tariff term already defined by this Court, the Court should give significant weight and construe the decision in HRL H325604 broadly against any contrary arguments raised by CBP.

Since HRL H325604 is entitled to deference, the burden of proving that the decision to classify CTC feed grade concentrate products in heading 2941 is erroneous rests on the government. *Universal Elecs.*, 112 F.3d at 491-92 (explaining that "our precedent has long and continuously stated that the decision of Customs is presumed to be correct"). While CBP is free to argue against itself in this litigation, this Court should give no deference to any arguments raised by the government against the holding in HRL H325604. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (holding that no deference is afforded "to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice").

For all the reasons above, we respectfully assert the CTC Concentrate is properly classified in HTSUS subheading 2941.30.00, which provides for "*Tetracyclines and their derivatives; salts*

*thereof.*"

## B.    Alternatively, the CTC Concentrate Is Classifiable in Heading 3003

If the additional materials in the CTC Concentrate are considered to be beyond the "impurities" allowed under HTSUS heading 2941 and classification in this heading is precluded, the subject CTC Concentrate product would be classified (in the alternative) as a "medicament" for "therapeutic" and "prophylactic" use in heading 3003.

### 1.    Interpretation of the Terms of Heading 3003

As noted above, HTSUS heading 3003 provides, in relevant part, for "*Medicaments ... for therapeutic or prophylactic uses ....*" The tariff terms "medicament," "therapeutic," and "prophylactic" are not defined in the HTSUS. However, these terms have been defined by this Court.

In *Nutricia N. Am., Inc. v. United States,* 666 F. Supp. 3d 1363, 1370 (Ct. Int'l Trade 2023), this Court defined the term "medicament" by reference to the ENs and dictionary definitions. *Id.* First, the Court noted the ENs state "[t]his heading covers medicinal preparations for use in the internal or external treatment or prevention of human or animal ailments"). *Id.* at 1370 (citing ENs 3003). The Court went on to state that "dictionaries consider the term 'medicament' synonymous with terms such as 'medicinal substance' and 'medication'" and have also defined this term as "a substance used for medical treatment; a medicine, remedy." *Id.* at 1370 n.3. (citations omitted). CBP has similarly defined the tariff term "medicament" as "medicine; substance for curing or healing, or for relieving pain" and "a substance used in therapy." (**Exhibit 23**, HRL H121544 (Oct. 6, 2014) (citations omitted).)

This Court has also previously defined the terms "therapeutic" and "prophylactic." In *Warner-Lambert*, this Court defined the tariff term "therapeutic" as follows:

"[r]elating to therapeutics or to the treatment of disease"; and

> "of or relating to the treatment of disease or disorders by remedial agents or methods: CURATIVE, MEDICINAL."

341 F. Supp. 2d at 1277 (citations omitted). This Court further reviewed the definition of "therapeutic" in *Inabata Specialty Chems.*, defining this term as follows:

> "relating to . . . the treatment, remediating, or curing of a disorder or disease."; and

> "embracing 'the alleviative or palliative, as well as the curative or healing qualities'"

366 F. Supp. 2d at 1362 (citations omitted). The Court went on to state that a product is "medicinal" if it is "of use, in curing or alleviating, or palliating or preventing, some disease or affliction …" *Id*. (citing *United States v. Alltransport, Inc.*, 44 C.C.P.A. 149, 152 (1957)) The Court also noted that "it is not necessary that a substance cure a disease to be described as therapeutic." *Id*. This Court also defined the tariff term "prophylactic" in *Warner-Lambert*, as follows:

> "1. Preventive; preventing disease; relating to prophylaxis. 2. An agent that acts to prevent a disease"; and

> "guarding from disease: preventing or contributing to the prevention of disease."

341 F. Supp. 2d at 1277 (citations omitted).

Since the terms therapeutic and prophylactic are both included in heading 3003, they must have different meanings. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings." (citing A. Scalia & B. Garner, Reading Law 170–171 (2012)). Based on the above definitions, a product is "therapeutic" if it treats, remediates, or cures a disease or affliction and a product is "prophylactic" if it prevents disease or affliction.  Applying these terms to the facts in this case, the CTC Concentrate is a "medicament" of heading 3003 because it meets these definitions.

## 2.    The CTC Concentrate Is a Medicament with Therapeutic and Prophylactic Uses

The subject CTC Concentrate is defined by its active pharmaceutical ingredient, Chlortetracycline, a well-documented and understood antibiotic that has both therapeutic and prophylactic properties.[15] It is a medically recognized antibiotic used frequently in the manufacture of medicated animal feed products.[16] As a *tetracycline* antibiotic, it is recognized as a bacteriostatic agent which acts to inhibit bacterial growth and reproduction.[17]

CTC Concentrate is a medicament that is used for both therapeutic and prophylactic purposes. The subject CTC Concentrate (after made into Type A Medicated Articles and subsequently added to medicated animal feed for delivery to animals) is used to treat and control a wide range of respiratory and enteric diseases in livestock, including bacterial pneumonia, bacterial enteritis, anaplasmosis, and other diseases. (JSUF ¶ 31.) The sole reason for ingesting the Type A Medicated Articles made with CTC Concentrate (when properly added to Type B and Type C Medicated Feeds for administration to animals) is to prevent these diseases or ailments. (*Id.*) Because the CTC Concentrate is a substance used in the curing, healing, or therapy of animal diseases, it meets the definition of a "medicament." Because the CTC Concentrate is a substance that both treats and prevents animal diseases, it also meets the definitions of "therapeutic" and "prophylactic" uses.

---

[15] *See supra* note 8, <u>Simultaneous determination of tetracycline, oxytetracycline, and chlortetracycline using liquid chromatography tandem mass spectrometry</u>, Food and Drug Admin., <u>https://www.fda.gov/science-research/fda-science-forum/simultaneous-determination-tetracycline-oxytetracycline-and-chlortetracycline-using-liquid</u> (last visited Mar. 18, 2025) (last visited Mar. 18, 2025).

[16] *Id.*

[17] *Id.*

The CTC Concentrate is used to treat serious ailments that threaten animal health, and is not provided to supplement dietary needs or achieve cosmetic effects. Therefore, this product is specifically provided for as a medicament within HTSUS heading 3003 and classification is appropriate therein pursuant to GRI 1.

**3.     The CTC Concentrate Is Principally Used as a Medicament for Therapeutic and Prophylactic Purposes**

It is well established that HTSUS heading 3003 is a "principal use" provision because it describes articles by the manner in which they are used, as opposed to by name. *BASF Corp. v. United States,* 798 F. Supp. 2d 1353, (Ct. Int'l Trade 2011) ("The court has previously found 3003.90.00 to be principal use provision.") (citing *Warner-Lambert*, 341 F. Supp. 2d at 1277); *cf Nutricia*, 666 F. Supp. 3d at 1379 (stating that heading 3003 "arguably contains language implicating use but is based on an eo nomine tariff term, 'Medicaments . . . .'"). Therefore, the guidance of AUSRI 1(a) directs that the use of the CTC Concentrate is to be determined in accordance with the use of the class or kind to which these goods belong, and the controlling use is the principal use. *Id.*

"The purpose of 'principal use' provisions in the HTSUS is to classify particular merchandise according to the ordinary use of such merchandise." *Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1364 (Fed. Cir. 1999). Therefore, the court must conduct a "principal use" analysis to determine whether the CTC Concentrate is a member of the class or kind of medicaments classified in heading 3003. *BASF*, 798 F. Supp. 2d at 1358 (citations omitted). The courts have established multiple factors (the "Carborundum Factors") to examine when undertaking a principal use analysis, including:

1.     the general physical characteristics of the merchandise;
2.     the expectation of the ultimate purchasers;
3.     the channels of trade in which the merchandise moves;

4.    the environment of the sale (e.g., the manner in which the merchandise is advertised and displayed);

5.    the usage of the merchandise;

6.    the economic practicality of so using the import; and

7.    the recognition in the trade of this use.

*Id.* at 1358 (citing *United States v. Carborundum Co.*, 536 F.2d 373, 377 (1976)).

Applying the *Carborundum* Factors to the product involved here indicates that CTC Concentrate is principally used for therapeutic and prophylactic purposes. We have addressed each of these factors below:

General Physical Characteristics of the Merchandise

The CTC Concentrate is a bulk ingredient for making Type A Medicated Articles that will be administered to animals through animal feed. (JSUF at ¶¶ 14, 20.) The product contains a single API, Chlortetracycline, that is an antibiotic recognized for treating specific diseases in livestock. (*Id.* at ¶ 6.) In its imported condition, the CTC Concentrate is neither suitable for use in animal feed, nor as a pure antibiotic because the potency range exceeds that which can be safely administered to livestock. (PSMF at ¶ 28.) Beyond the high Chlortetracycline potency, CTC Concentrate is specifically made with Calcium Carbonate as a complexing agent to make it suitable for further manufacture. (*Id.* at ¶ 32; Ex. 1, Schroeder Dep. Tr. at 13:20-23.) Based on these facts, the general physical characteristics of CTC Concentrate support concluding that it is principally used for therapeutic and prophylactic purposes (*i.e.*, a medicament for treating and preventing specific diseases in livestock).

Expectations of the Ultimate Purchasers

Zoetis is the ultimate purchaser of the CTC Concentrate in its imported condition, using it to make Type A Medicated Articles. (PSMF at ¶ 22.) Zoetis is a drug company, not a feed

manufacturer.[18] (PSMF at ¶ 19.) Zoetis has specific requirements for CTC Concentrate in order to use this product as an ingredient in its Type A Medicated Articles, including sizing, flowability, and potency. (*Id.* at ¶¶ 24-26.)  The CTC Concentrate meets these requirements and is used for making Type A Medicated Article drugs that can be administered to animals in medicated animal feed. There are only five companies that make and sell Type A Medicated Articles, including Zoetis and Pharmgate that both make products with CTC feed grade concentrate. (PSMF at ¶ 23.) Pharmgate's expectations that CTC feed grade concentrate is useful as an antibiotic drug ingredient were detailed in HRL H325604. (*See* discussion *supra* Part A.2.) Based on these facts, the expectations of the ultimate purchaser support concluding the CTC Concentrate is principally used for therapeutic and prophylactic purposes.

Channels of Trade and Environment of Sale

Jinhe, the manufacturer of the CTC Concentrate, does not directly market, advertise, or sell the CTC Concentrate to Zoetis. (PSMF at ¶ 31.) However, Jinhe's website states "Chlortetracycline (CTC) Feed Grade is a broad-spectrum antimicrobial drug with a long history of use in animals which is usually administered in the feed for prophylactic purposes."[19] (PSMF at ¶ 32.) Zoetis purchases the CTC Concentrate through a third-party broker that provides the product specifications. (PSMF at ¶ 35.) Zoetis purchases the CTC Concentrate in 750kg supersacks. (JSUF at ¶ 14.) This bulk material is used solely for further processing and manufacture into Type A Medicated Articles and is marked as such on the packaging. (*Id.* at ¶¶ 9, 20.) Based on these facts, the channels of trade and environment of sale support concluding the

---

[18] *See supra* note 4.

[19]    Chlortetracycline    Feed    Grade    (Powder/Granule),    Jinhe, http://www.jinhe.com/en/product/Index/133 (last accessed Mar. 19, 2025).

CTC Concentrate is principally used for therapeutic and prophylactic purposes.

Usage of the Merchandise (in the Same Manner which Defines the Class)

Chlortetracycline is a recognized antibiotic used to treat specific diseases in livestock. (*Id.* at ¶ 7.) CTC Concentrate is a drug. (PSMF at ¶ 1.) CTC Concentrate is used to make Type A Medicated Articles, which are drugs regulated by the FDA. (JSUF at     ¶     20.)     The     CTC Concentrate must be processed after import before it can be administered to animals in their feed and then only based on a Veterinary Feed Directive. (*Id.* at ¶ 30.) CTC Concentrate is ultimately administered to livestock through animal feed, but it is not food. (PSMF at ¶ 13.) It is the Type C Medicated Feed that improves the health and growth of livestock, not the CTC Concentrate or Type A Medicated Articles, which is exclusively used as medicine. (PSMF ¶21; Ex. 2, ROG Response No. 18.) These facts support concluding that the CTC Concentrate is used in the same manner as other medicaments for treating and preventing specific diseases in livestock (*i.e.*, a therapeutic and prophylactic use) and not as food.

Economic Practicality of So Using the Import

Using CTC Concentrate to manufacture Type-A Medicated Articles is economically practicable and a central component of the Zoetis business model for the production of certain Type-A Medicated Articles. (*Id.* at ¶ 29.) Importing CTC Concentrate is the most efficient and cost-effective method for manufacturing the Company's Type-A Medicated Articles. (*Id.* at ¶ 30.) Based on these facts, the economic practicality of using CTC Concentrate to make Type A Medicated Articles indicates that it is principally used for therapeutic and prophylactic purposes.

Recognition in the Trade of this Use

Chlortetracycline, the API in CTC Concentrate is a recognized antibiotic. (JSUF at ¶¶ 6-7.) This drug is used for treating wide range of respiratory and enteric diseases, such as bacterial

pneumonia, bacterial enteritis, anaplasmosis, and other diseases in livestock. (*Id.* at ¶ 31.) Similarly, CTC Concentrate is recognized as "a broad-spectrum antimicrobial drug with a long history of use in animals which is usually administered in the feed for prophylactic purposes."[20] This recognition in the trade also supports classifying CTC Concentrate as a medicament as Chlortetracycline is recognized as a drug not a food. (JSUF at ¶ 7.) It contains no nutrients and feeding a large amount to an animal would make it sick or kill it. (Ex. 1, Schroeder Dep. Tr. at 99:19-100:6; Ex. 16, HRL H325604; JSUF at ¶¶ 17, 31.) Based on these facts, it is well-recognized that the CTC Concentrate is used in the same manner as other medicaments for treating and preventing specific diseases in livestock (*i.e.,* a therapeutic and prophylactic use) and not as food.

## 4.      The CTC Concentrate Is Classified Under HTSUS Heading 3003 Pursuant to GRI 1

As detailed above, the CTC Concentrate meets the definition of "medicament" and is used for therapeutic and prophylactic purposes. Since the CTC Concentrate consists of Chlortetracycline (the active ingredient) that has been mixed with calcium carbonate (and contains multiple additional materials, *i.e.*, mycelial cake, microbial cells, residual nutrients, other fermentation components, and metabolic products), it consists of "two more or more constituents which have been mixed together." (JSUF at ¶ 23; PSMF ¶¶ 17-18.) Finally, the CTC Concentrate is imported in bulk bags and, therefore, is not put up in measured doses or in forms or packings for retail sale. (*Id.* at ¶ 14.)

Based on the foregoing, we respectfully submit (in the alternative) the CTC Concentrate product is correctly classified as a veterinary medicament in HTSUS heading 3003 pursuant to GRI 1. Even if this Court were to conclude the CTC Concentrate could not be classified in heading

---

[20] *See id.*

3003 pursuant to GRI 1, for the reasons discussed below, applying GRI 3 results in the same conclusion.

**5.    The CTC Concentrate Is Not Excluded from HTSUS Heading 3003 by the Section or Chapter Notes**

Having classified the CTC Concentrate in heading 3003, we must confirm it is not excluded by any relative Section or Chapter Notes. Chapter 30, Note 1(a) states:

> This chapter does not cover: … (a) Foods or beverages (such as dietetic, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), other than nutritional preparations for intravenous administration.

The CTC Concentrate is not a food or beverage excluded by Chapter 30, Note 1(a).

The CTC Concentrate is not a beverage. A common definition of the term "beverage" is "a drinkable liquid."[21] The CTC Concentrate is a "fine brown powder or granular substance," not a liquid. (JSUF at ¶ 14.)

While the CTC Concentrate may ultimately be administered to an animal through food (*i.e.*, by *feeding* the medicine to the animal), the CTC Concentrate is not a *food*. A common definition of the term "food" is a "material consisting essentially of protein, carbohydrate, and fat used in the body of an organism to sustain growth, repair, and vital processes and to furnish energy."[22] The CTC Concentrate does not consist essentially of protein, carbohydrate, or fat. Rather, it consists essentially of the antibiotic medicine, Chlortetracycline. Further, the CTC Concentrate is not used in the body of an organism to sustain growth, repair, and vital processes and to furnish energy. Instead, CTC Concentrate, after it is made into a Type A Medicated Article and then mixed into a Type C Medicated Feed, is used as a medicine to treat certain diseases by

---

[21]    <u>Beverage</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/beverage (last visited Mar. 18, 2025).

[22] <u>Food</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/food (last visited Mar. 16, 2025).

killing bacteria. While the CTC Concentrate is used in medicated animal feed after it is made into

a Type A Medicated Article, this is only as a method of delivery for the medicine. (Ex. 2, ROG

Response Nos. 3, 7.) Any nutritional benefit within the CTC Concentrate itself is not significant

to the diet of the animal. (JSUF ¶ 17.)

Similarly, the CTC Concentrate is not a food supplement, because it is essential medicine

for animals that need it, rather than a supplement to their diet. (*Id.* at ¶ 15.) It is not a nutrient added

to foods that otherwise lack those nutrients. (Ex. 12, Amended ROG Response at No. 21.) This

material is solely added for it therapeutic and prophylactic (*i.e.*, medicinal) benefits. While the

CTC Concentrate may be considered an enhancement to certain medicated animal feed, based on

its ultimate use in the production of Type A Medicated Articles that are added to Type C Medicated

Feeds, it is the addition of the CTC Concentrate-based Type A Medicated Article that makes the

feed "medicated" not what makes it food (*i.e.,* the CTC Concentrate adds the medicine, not the

nutrition).

**6.      The CTC Concentrate Is Not Excluded from Heading 3003 by the Guidance of the ENs**

The Explanatory Notes for heading 3003 provide guidance on the "medicaments" covered

by this heading, but do contain a specific exclusion for "foodstuffs and beverages," as follows:

> The provisions of the heading text do not apply to foodstuffs or beverages such as
> dietetic, diabetic or fortified foods, tonic beverages or mineral waters (natural or
> artificial), which fall to be **classified under their own appropriate headings**. This
> is essentially the case as regards food preparations containing only nutritional
> substances. The major nutritional substances in food are proteins, carbohydrates
> and fats. Vitamins and mineral salts also play a part in nutrition.

> Similarly foodstuffs and beverages containing medicinal substances
> are **excluded** from the heading if those substances are added solely to ensure a
> better dietetic balance, to increase the energy-giving or nutritional value of the
> product or to improve its flavour, always provided that the product retains its
> character of a foodstuff or a beverage.

**Exhibit 29**. "These Explanatory Notes indicate that note 1(a) to chapter 30 was intended to draw a bright line between the medicaments of chapter 30 and the foods … that are to be classified elsewhere in the HS nomenclature." *Nutricia*, 666 F. Supp. 3d at 1373.

The CTC Concentrate is not a foodstuff (*i.e.*, it is not a food preparation containing only nutritional substances, such as proteins, carbohydrates and fats). Further, the CTC Concentrate is not a foodstuff containing a medicinal substance that is "added solely to ensure a better dietetic balance, to increase the energy-giving or nutritional value of the product or to improve its flavour." The CTC Concentrate has the character of medicine that can be administered to animals through medicated feed (*i.e.*, the CTC Concentrate is developed for delivering antibiotic medicine, not for delivering nutrition).

Even if the CTC Concentrate were considered a foodstuff containing a medicinal substance, it is not, it would still remain in heading 3003 since it does not have the character of a foodstuff. Per the ENs, medicinal foodstuff products are excluded from heading 3003 only if the medicinal substance is added for specific non-medicinal purposes and the product retains the character of a foodstuff. *Nutricia*, 666 F. Supp. 3d at 1380 (noting that a food intended to treat a specific disease or ailment is not within heading 3003, unless it is based on a medicinal substance that is not "added solely to ensure a better dietetic balance, to increase the energy-giving or nutritional value of the product or to improve its flavour").[23] As detailed above, the Chlortetracycline in CTC Concentrate is for a specific medicinal purpose.

As it relates to products that are included within heading 3003, the ENs state, in relevant part:

---

[23] Notice of appeal docketed on February 5, 2024 (*Nutricia N. Am., Inc. v. United States*, 2024-1436).

> This heading covers medicinal preparations for use in the internal or external treatment or prevention of human or animal ailments. These preparations are obtained by mixing together two or more substances.
>
> \*        \*        \*
>
> The heading includes … [p]reparations containing a single pharmaceutical substance together with an excipient, sweetening agent, agglomerating agent, support, etc.
>
> \*        \*        \*
>
> [T]he heading covers preparations in which the foodstuff or the beverage merely serves as a support, vehicle or sweetening agent for the medicinal substances (e.g., in order to facilitate ingestion).

CTC Concentrate falls squarely within these inclusive descriptions as it is a medicinal preparation, not food. The CTC Concentrate contains a single pharmaceutical substance, Chlortetracycline, along with other, non-active components (mycelial cake, microbial cells, residual nutrients, other fermentation components, and metabolic products), which are similar to the EN examples (excipient, sweetening agent, agglomerating agent, support, etc.). These inert substances serve merely as support/carrier for the Chlortetracycline and do not alter the properties of the active ingredient. Finally, even if the additional substances in the CTC Concentrate were considered to be "nutritional substances," (they are not) the CTC Concentrate remains in this heading since these substances are present only to support the "medicinal substance." *Nutricia*, 666 F. Supp. 3d at 1373. Therefore, the ENs support classification of the CTC Concentrate in heading 3003.

**7.    The CTC Concentrate Is Properly Classified in HTSUS Subheading 3003.20.00**

HTSUS subheading 3003.20.00 specifically provides for medicaments "containing antibiotics." In the alternative to classification under HTSUS subheading 2941.30.00, we assert that this is the proper subheading tariff classification for the CTC Concentrate.

**C.    The CTC Concentrate Is Not Properly Classified in HTSUS Heading 2309**

**1.    The CTC Concentrate Is Specified in a Heading Outside Heading 2309**

Pursuant to GRI 1 and the plain language of Chapter 23, Note 1, the imported CTC Concentrate is excluded from classification within HTSUS heading 2309. Specifically, HTSUS Chapter 23, Note 1 states that heading 2309 only includes products that are "***not specified or included elsewhere***…." (emphasis added). Based on the language of Chapter 23, Note 1, before considering whether heading 2309 may cover the CTC Concentrate, we must start the tariff classification analysis elsewhere in tariff. *See Rollerblade, Inc. v. United States*, 116 F. Supp. 2d 1247, 1251 (Ct. Int'l Trade 2000) ("Classification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically. … "Therefore, the Court must first address whether the imported goods are more specifically classifiable under [other] subheading[s]."), *aff'd* 282 F.3d 1349 (Fed. Cir. 2002).

As directed by the Chapter Note, the CTC Concentrate could only be classified in HTSUS heading 2309 if it is "not specified or included elsewhere." In other words, heading 2309 would only apply if no other applicable provision covers the CTC concentrate. Since the CTC Concentrate is covered as a "medicament" in heading 3003 (or as an antibiotic in heading 2941 based on our principal argument), it is excluded from classification in heading 2309.

**2.    The CTC Concentrate Is Not a Preparation of a Kind Used for Animal Feeding**

Assuming the classification analysis must proceed beyond the clear prohibition in Chapter 23, Note 1, the imported CTC Concentrate is not "a preparation of a kind used for animal feeding" as contemplated by the terms of heading 2309. Beyond the threshold prohibition addressed above, HTSUS Chapter 23, Note 1 also provides specific requirements for the goods that may be classified in heading 2309 stating that "Heading 2309 includes products of a kind used in animal feeding, not specified or included elsewhere, obtained by processing vegetable or animal materials to such an

36

extent that they have lost the essential characteristics of the original material." Emphasis added; *see also*, ENs 2309 (stating "[t]he heading includes products of a kind used in animal feeding, obtained by processing vegetable or animal materials to such an extent that they have lost the essential characteristics of the original material") The General EN for Chapter 23 elaborates that:

> This Chapter covers the various residues and wastes derived from vegetable materials used by food-preparing industries, and also certain products of animal origin. The main use of most of these products is as animal feeding stuffs, either alone or mixed with other materials, although some of them are fit for human consumption. Certain products (e.g., wine lees, argol, oil-cake) also have industrial uses.

**Exhibit 30**, General ENs, Chapter 23.

Chlortetracycline is not a vegetable or animal, nor is the CTC Concentrate obtained by processing animal or vegetable materials. The term vegetable may be defined as "a usually herbaceous plant (such as the cabbage, bean, or potato) grown for an edible part that is usually eaten as part of a meal."[24] The term animal may be defined as "any of a kingdom (Animalia) of living things including many-celled organisms and often many of the single-celled ones (such as protozoans) that typically differ from plants in having cells without cellulose walls, in lacking chlorophyll and the capacity for photosynthesis, in requiring more complex food materials (such

---

[24]    Vegetable,    Merriam-Webster    Dictionary,    https://www.merriam-webster.com/dictionary/vegetable) (last visited Mar. 18, 2025). The term "vegetable" was addressed in older trade case law, but not specifically defined by citing dictionary definitions. *See, e.g.*, *Togasaki & Co. v. United States*, 12 U.S. Cust. App. 463, 466-67 (C.C.P.A. 1925) (holding that "whether a certain vegetable product is, or is not, a vegetable, depends upon the use to which it is or may be put") and *United States v. Wallace*, 4 U.S. Cust. App. 142, 143 (C.C.P.A. 1913) (explaining that "in the tariff acts the word 'vegetables' has not been employed in a strictly botanical sense, but rather has been applied to those articles of food which constitute in common acceptation the vegetable part of a repast").

as proteins), in being organized to a greater degree of complexity, and in having the capacity for spontaneous movement and rapid motor responses to stimulation."[25]

The CTC Concentrate is essentially an antibiotic derived from processing a bacterial growth. (JSUF at ¶¶ 8-10; PSMF at ¶ 2.) While it is ultimately used in an animal feed (as the mechanism for delivering the medicine to the animal), the essential character of the CTC Concentrate is not as a feed (supplementary or complete). (JSUF at ¶ 7.) Further, CTC Concentrate does not contain any significant nutrients. (*Id*. at ¶ 17.) CTC Concentrate contains the API and other residue of the antibiotic manufacturing process, not for nutrition, but for manufacturing convenience. (JSUF at ¶¶ 8-13.)

Further, the CTC Concentrate is not "residues and wastes derived from vegetable materials used by food-preparing industries" or "certain products of animal origin" used "as animal feeding stuffs." (PSMF ¶ 36.) This Court has defined the term "feedstuff" in *Vitek Supply Co. v. United States*, 17 C.I.T. 111, 112 (1993) as follows:

> "a feed for domestic animals; *usu*: any of the constituent nutrients of an animal ration";

> "any material or substance used or intended for use in the feeding of livestock, poultry, fur-bearing animals or other animals for any purpose whatever."

*Id.* (citations omitted). The Court further noted that an article is "for feeding purpose" when it "forms a proper part of an animal's ration." *Id.* (citing *James Loudon & Co. v. United States*, 30 Cust. Ct., 67-68 (1953)).  The CTC Concentrate is not feed, nor is it for a feeding purpose. (*See* discussion, *supra* at Part B.3; PSMF at ¶ 13.) It is not a constituent nutrient, nor is it part of an

---

[25] <u>Animal</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/animal (last visited Mar. 18, 2025). No cases or Customs Rulings were found directly interpreting the meaning of the word "animal." *But see Kahrs Intern., Inc. v. United States*, 791 F.Supp.2d 1228, 1241 n.10 (Ct. Int'l Trade 2011) (explaining "that a horse is an animal" is a "judicially known fact and judicially decided fact").

animal food ration. (JSUF ¶ 17; Ex. 1, Schroeder Dep. Tr. at 14:2-10.) Instead, the CTC Concentrate is medicine to be administered through animal feed.[26]

In further support, we note that the heading 2309 ENs also contain specific guidance about the products included within this heading, as follows:

> This heading covers sweetened forage and prepared animal feeding stuffs consisting of a mixture of several nutrients designed:
> (1)  to provide the animal with a rational and balanced daily diet (**complete feed**);
> (2)  to achieve a suitable daily diet by supplementing the basic farm-produced feed with organic or inorganic substances (**supplementary feed**); or
> (3)  for use in making complete or supplementary feeds.

**Exhibit 27**.

As noted above, the ENs indicate heading 2309 covers three types of prepared animal feeding stuffs, complete feed, supplementary feed, and feeding stuffs for use in making complete or supplementary feeds ("known in the trade as 'premixes'"). ENs 2309(II)(C). The parties agree that CTC Concentrate is none of these. (JSUF at ¶ 15.) The CTC Concentrate is used for making Type A Medicated Article products, not feed. *See* discussion above.

In contrast to the very narrow and specific group of products that are included within Chapter 23 and heading 2309, the ENs broadly exclude "Medicaments of heading 30.03 or 30.04" from heading 2309. ENs 2309. Having agreed the CTC Concentrate product is not a complete feed, supplementary feed, or premix, and having shown the product is a medicament of heading 3003 (in the alternative), the CTC Concentrate is excluded from heading 2309.[27] The specific exclusion

---

[26]  In *Warner-Lambert,* this Court recognized the distinction between medicinal preparations and feed products. 341 F. Supp. 2d at 1283. To be a medicinal preparation, it must be proven the product's principal use is for therapeutic or prophylactic purposes beyond general feeding purposes. *Id.* (citing *H. Reisman Corp. v. United States*, 17 CIT 1260 (1993), *appeal dismissed*, 39 F.3d 1195 (Fed. Cir. 1994)).

[27]  The 2309 ENs also exclude certain vitamins classified in heading 2936 and "[o]ther products of Chapter 29."

of medicaments from heading 2309 contained in the heading 2309 ENs is particularly compelling guidance in this case. *IKO Indus.,* 105 F.3d at 625.

Ultimately, it appears that CBP is attempting to apply a very broad interpretation of use for heading 2309, approaching its determination based on the CTC Concentrate's incorporation into animal feed as the method of administration for the medicine (*i.e.*, the method of delivery to the animal) rather than its principal use as a medicine. The fact that CTC Concentrate is used to make Type A Medicated Articles that go into medicated feed does not mean it is a product used for animal feeding as contemplated by heading 2309. CBP applied similar reasoning in HRL 964944 (Feb. 8, 2002) when the agency considered the classification of starch pellets used for dog chew bones. (**Exhibit 24**.) While CBP recognized that "Heading 2309 is a 'use provision,'" the agency concluded that "[e]ven though the specific import is used solely in the production of dog chew bones, the instant pellets do not belong to the class or kind of goods principally used in animal feed." *Id.* Similarly, even though the CTC Concentrate may solely be used in the production of Type A Medicated Articles that are used to make Type C Medicated Feed, they do not belong to the class or kind of goods principally used for animal feeding. Instead, the CTC Concentrate belongs to the class or kind of goods principally used as a medicament.

**3.    The CTC Concentrate Has Not Lost the Character of Chlortetracycline**

In addition to the Chapter 23, Note 1 restriction on products classified elsewhere in the tariff, and the specific use and processing requirements, this note also requires that products of heading 2309 "*have lost the essential characteristics of the original material*." (emphasis added). The CTC Concentrate retains its essential characteristics as an antibiotic, based on the Chlortetracycline material, and it is ultimately provided to livestock as a medicine to treat and prevent disease.  Accordingly, given that the CTC Concentrate is specifically provided by HTSUS heading 3003 and has not lost its antibiotic characteristics, pursuant to GRI 1 and Chapter 23, Note

1, the CTC Concentrate cannot be classified in heading 2309.

As discussed above, the imported CTC Concentrate is an antibiotic-based mixed medicament product that is specifically provided for within HTSUS heading 3003 (in the alternative to heading 2941). Accordingly, per GRI 1 and the unambiguous statutory requirements and restrictions provided within HTSUS Chapter 23, Note 1, classification of the CTC Concentrate within HTSUS heading 2309 is prohibited.

**D.    GRI 3 Supports Classification of the CTC Concentrate in Heading 3003 when Compared to Heading 2309**

Upon review of our alternative argument, assuming this Court finds the CTC Concentrate cannot be classified between heading 2903 and heading 3003 pursuant to GRI 1, we assert the product is also properly classified in heading 3003 pursuant to GRI 3.

**1.    The CTC Concentrate Would Be Classified in Heading 3003 Pursuant to GRI 3(a)**

GRI 3(a) provides, in pertinent part, that "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." The proposition set out in GRI 3(a) is known as the "rule of relative specificity" because the heading with requirements more difficult to satisfy will prevail and be applied over a more general heading. When GRI 3(a) applies, the Court will "look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1441 (Fed. Cir. 1998) (citation omitted).

If the CTC Concentrate were considered to be classifiable under both HTSUS heading 2309 (preparations of a kind used for animal feeding) or heading 3003 (medicaments for therapeutic or prophylactic uses), heading 3003 would prevail. While HTSUS heading 2309 covers preparations used for animal feeding, it does not address the full purpose of the subject CTC

Concentrate, as this product must undergo post-importation processing to be used as a medicinal additive to animal feed.

In contrast to heading 2309, heading 3003 covers the CTC Concentrate in its entirety because it is an antibiotic medicament for therapeutic or prophylactic uses (heading 2309 would similarly fail against heading 2941 as it covers the CTC Concentrate in its entirety as an antibiotic) Further, heading 3003 covers the CTC Concentrate in its condition as imported, while classification in heading 2309 would depend upon some post-importation processing. Taking into consideration the language of the HTSUS headings under review, the CTC Concentrate would not be properly classified under HTSUS heading 2309 as the competing headings provide a more specific description of these articles according to the rule of relative specificity, GRI 3(a).

## 2.    The CTC Concentrate Would Be Classified in Heading 3003 Pursuant to GRI 3(b)

GRI 3(b) provides, in pertinent part, that "[m]ixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character . . ." Essential character may be based on the nature of a material or component, its bulk, quantity, weight, or value, or by the role of a constituent material in relation to the use of the good. ENs VIII to GRI 3(b).

The CTC Concentrate is a medicament for therapeutic or prophylactic uses that is used in the manufacture of Type-A Medicated Articles, which in turn, are used in the manufacture of Type-C Medicated Feeds. The primary function of the CTC Concentrate is as a medicine to prevent or control certain illnesses or diseases in livestock. The most critical component of the CTC Concentrate is its Chlortetracycline, a recognized antibiotic. The CTC Concentrate would not be useful as a preparation for use in the manufacture of Type-A Medicated Articles or, subsequently Type-C Medicated Feeds if it did not contain the Chlortetracycline antibiotic medicine.

Chlortetracycline is essential to the function of the CTC Concentrate as a medicament, and its use in animal feed products is purely for delivery of this medicine to livestock. The character of the CTC Concentrate is provided by Chlortetracycline, its API, and the other ingredients in the CTC Concentrate do not make this product "food," as they have minimal or no nutritional value. (JSUF ¶ at 24.) Based on the nature of the Chlortetracycline and its value in relation to the function of the CTC Concentrate, Chlortetracycline, as a medicament, provides the essential character to the CTC Concentrate. Therefore, the CTC Concentrate would be classified in heading 3003 by application of GRI 3(b).

**3.      The CTC Concentrate Would Be Classified in Heading 3003 Pursuant to GRI 3(c)**

If the Court determines that the classification of the CTC Concentrate cannot be determined pursuant to GRI 1, GRI 3(a), or GRI 3(b), then the tariff classification of such articles is determined according to GRI 3(c). GRI 3(c) provides, in pertinent part, that "[w]hen goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration."

CBP liquidated the entry of the subject CTC Concentrate under HTSUS subheading 2309.90.10. Plaintiff asserts that the CTC Concentrate is properly classified in HTSUS heading 2941 or, alternatively, heading 3003. Assuming HTSUS headings 2309, 2941, and 3003 all merit equal consideration, HTSUS heading 3003 is last in numerical order as compared to the other headings. Therefore, the CTC Concentrate would be classified in heading 3003 by application of GRI 3(c).

<u>**CONCLUSION**</u>

For the reasons set forth above, Zoetis respectfully asserts that it has met its burden of showing that CBP's classification of the subject CTC Concentrate in HTSUS subheading 2309.90.1050 is incorrect. Therefore, Zoetis respectfully requests that the Court issue summary

judgment in its favor and order CBP to reliquidate the subject entries with classification of the CTC Concentrate in HTSUS subheading 2941.30.00 or, alternatively, HTSUS subheading 3003.20.00, and to refund excess duties paid with interest as provided by law.

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Zoetis Services LLC.
320 S. Canal Street
Suite 3300
Chicago, IL 60606
Telephone (312) 569-1000

By:     /s/ Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JOSEPH A. LAROSKI, JR., *JUDGE***

| | |
|---|---|
| ZOETIS SERVICES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Court No.  22-00056 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**PLAINTIFF'S CERTIFICATION OF COMPLIANCE**

I, Wm. Randolph Rucker, counsel for Plaintiff Zoetis Services LLC, certify that the foregoing brief complies with the type-volume limitation set forth in the *Standard Chambers Procedures* and USCIT Rules 56 and 81. Specifically, this brief contains 12,802 words (excluding the parts of the brief exempted by *Standard Chambers Procedures* 2(B)) as determined by the word count feature of the word processing program used to create this brief. I further certify that the foregoing brief complies with the typeface requirements set forth in USCIT Rule 81. Specifically, this brief has been prepared using a proportionately spaced typeface using Microsoft Word 2007, in 12-point Times New Roman font.

> **FAEGRE DRINKER BIDDLE & REATH LLP**
> Attorneys for Plaintiff
> Zoetis Services LLC
> 320 S. Canal Street, Suite 3300
> Chicago, IL 60606
> Telephone (312) 569-1000
>
> By:    /s/ Wm. Randolph Rucker
>          Wm. Randolph Rucker

Dated: March 19, 2025

**CERTIFICATE OF SERVICE**

Wm. Randolph Rucker certifies that he is an attorney with the law firm of Faegre Drinker

Biddle & Reath LLP, with offices located at 320 S. Canal Street, Suite 3300, Chicago, Illinois

60606, and that on March 19, 2025 on behalf of the Plaintiff herein, he served the attached Motion

for Summary Judgment on:

> Luke Mathers
> U.S. Department of Justice
> Commercial Litigation Branch, Civil Division
> 26 Federal Plaza
> Suite 346
> New York, NY 10278
> Email: luke.mathers@usdoj.gov

the attorney for the Defendant herein, by electronic service in the CM/ECF System of the Court of

International Trade.

/s/ Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JOSEPH A. LAROSKI, JR., *JUDGE***

| | |
|---|---|
| ZOETIS SERVICES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Court No.  22-00056 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**TABLE OF CONTENTS FOR EXHIBITS**

| Exhibit | Full Citation | Abbreviated Citation | Confidential |
|---|---|---|---|
| 1 | Schroeder Deposition Transcript | Schroeder Dep. Tr. | Yes |
| 2 | Plaintiff's Responses to Defendant's First Set of Interrogatories | ROG Response | No |
| 3 | Guidance for Industry #213 [ZOETIS00422-00439] | GFI # 213 | No |
| 4 | Understanding the Past and the Present of Medicated Feeds [ZOETIS00804-00838] | | No (Despite Markings) |
| 5 | Chlortetracycline Photographs [ZOETIS01013-01014] | | Yes |
| 6 | Draft Guidance for Industry #292 [ZOETIS00926-00936] | GFI # 292 | Yes |
| 7 | Jine Material Safety Data Sheet [ZOETIS00446-00448] | | No |
| 8 | Zoetis Material Safety Data Sheet [ZOETIS00375-00381] | | No |
| 9 | Pucheng Safety Data Sheet [ZOETIS00918-00925] | | Yes |
| 10 | Process Flow Diagram [ZOETIS00668-00670] | | No |
| 11 | Tauren Deposition Transcript | Tauren Dep. Tr. | Yes |
| 12 | Plaintiff's Amended Responses to Defendant's First Set of Interrogatories | Amended ROG Response | No |
| 13 | Jinhe VMF Approval Letter [ZOETIS00937-00939] | | Yes |

| Exhibit | Full Citation | Abbreviated Citation | Confidential |
|---|---|---|---|
| 1 | Schroeder Deposition Transcript | Schroeder Dep. Tr. | Yes |
| 14 | Pharmagate Authorization to Incorporate by Reference [ZOETIS01021] | | Yes |
| 15 | Pharmagate Submission to FDA [ZOETIS00940] | | Yes |
| 16 | Headquarters Ruling Letter H325604 | HRL H325604 | No |
| 17 | Certificate of Origin [ZOETIS00365] | | Yes |
| 18 | Bill of Lading [ZOETIS00778-00780] | | Yes |
| 19 | Invoices [ZOETIS00781-00786] | | Yes |
| 20 | New York Ruling Letter 840979 | NYRL 840979 | No |
| 21 | Protest Denial 390121123865 | | No |
| 22 | New York Ruling Letter 802423 | NYRL 802423 | No |
| 23 | Headquarters Ruling Letter H121544 | HRL H121544 | No |
| 24 | Headquarters Ruling Letter 964944 | HRL 964944 | No |
| 25 | *Pharmgate v. United States* Form 13 | | No |
| 26 | *Jinhe Biotechnology Co., Ltd. v. United States* Summons | | No |
| 27 | Explanatory Notes to Heading 2309 | | No |
| 28 | Explanatory Notes to Heading 2941 | | No |
| 29 | Explanatory Notes to Heading 3003 | | No |
| 30 | Explanatory Notes to Chapter 23 | | No |
| 31 | Explanatory Notes to Chapter 29 | | No |