UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

———————————————————————
                                    :
ZOETIS SERVICES, LLC,               :
                                    :
                        Plaintiff,  :
                                    :
            v.                      :    Court No. 22-00056
                                    :
UNITED STATES,                      :
                                    :
                        Defendant.  :
                                    :
———————————————————————

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**


                              BRETT A. SHUMATE
                              Assistant Attorney General

                              PATRICIA M. McCARTHY
                              Director

                              JUSTIN R. MILLER
                              Attorney-In-Charge
                              International Trade Field Office

                              AIMEE LEE
                              Assistant Director

*Of counsel*:                 MARCELLA POWELL
MICHAEL A. ANDERSON           Senior Trial Counsel
Office of the Assistant Chief Counsel    Department of Justice, Civil Division
International Trade Litigation    Commercial Litigation Branch
U.S. Customs and Border Protection    26 Federal Plaza – Suite 346
                              New York, New York 10278
                              (212) 264-9230
Dated: February 13, 2026      *Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

## TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT .......................................................................... 1

ARGUMENT .......................................................................................................... 1

I.    THE CTC CONCENTRATE IS CLASSIFIABLE IN HEADING 2309, HTSUS ........... 1

   A.  The CTC Concentrate Falls Within The Class Or Kind of Goods Principally
       Used As Preparations In Animal Feeding.................................................. 2

   B.  The CTC Concentrate Is A Microingredient Used In A Premix And, As Such,
       Is Classifiable In Heading 2309, HTSUS. ................................................ 5

II.   THE CTC CONCENTRATE IS NOT CLASSIFIABLE IN HEADING 2941, HTSUS .. 8

III.  THE CTC CONCENTRATE IS NOT CLASSIFIABLE IN HEADING 3003, HTSUS 12

IV.   THE CTC CONCENTRATE IS PROPERLY CLASSIFIABLE IN SUBHEADING
      2309.90.95, HTSUS ............................................................................. 15

V.    IN THIS DE NOVO ACTION, THE COURT IS NOT BOUND BY CBP'S
      ADMINISTRATIVE RULINGS, WCO DOCUMENTS, OR RECENT AMENDMENTS
      TO THE EXPLANATORY NOTES ................................................................ 15

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Austin Chem., Inc. v. United States*, 659 F. Supp. 229, 233 (Ct. Int'l Trade 1987)...................... 13

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) ....................................................... 4

*Haggar Co. v. Helvering*, 308 U.S. 389, 394, (1940)....................................................................... 4

*Janssen Ortho LLC v. United States*, 425 F. Supp. 3d 1352, 1363 (Ct. Int'l Trade 2020)........... 12

*Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).................................... 16, 17

*Jewalpak Corp. v United States*, 97 F. Supp. 2d 1192, 1196 (Ct. Int'l Trade 2000)................... 14

*Jing Mei Automotive (USA) v. United States*, 682 F. Supp. 3d 1354, 1381 (Ct. Int'l Trade 2023) .................................................................................................................................................... 14

*Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) .................................................... 6

*Kent Displays, Inc. v. United States*, 698 F. Supp. 3d 1339, 1349 (Ct. Int'l Trade 2024)............ 16

*Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998) ............................. 15

*Skaraborg Inv. USA, Inc. v. United States*, 22 Ct. Int'l Trade 413, 417 (1998) .......................... 17

*StarKist Co. v. United States*, 29 F.4th 1359, 1361 (Fed. Cir. 2022) ........................................... 15

*United States v. Carborundum Co.*, 536 F.2d 373 (C.C.P.A. 1976)............................................... 12

*United States v. Citroen*, 223 U.S. 407 (1912) .............................................................................. 14

*Vesser v. Off. of Pers. Mgmt.*, 29 F.3d 600, 605 (Fed. Cir. 1994) ................................................... 4

*Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1313 (10th Cir. 2022) ................... 6

*Zenith Elecs. Corp. v. United States*, 755 F. Supp. 397, 411 (Ct. Int'l Trade 1990), *aff'd*, 988 F.2d 1573 (Fed. Cir. 1993) .................................................................................................................... 4

## Statutes

28 U.S.C. § 2640............................................................................................................................ 16

28 U.S.C. § 2643............................................................................................................................ 17

## Harmonized Tariff Schedule of the United States

General Rule of Interpretation 1 ................................................................................................. 1, 6

General Rule of Interpretation 6 ............................................................................ 5

Note 1 to Chapter 23, HTSUS .................................................................... 3, 4, 5

Note 1 to heading 2309 ......................................................................................... 7

Note 3 to Chapter 30, HTSUS .............................................................................. 12

Subheading 2309.90.95 ........................................................................................ 15

Heading 2309 .............................................................................................. passim

Heading 2941 .............................................................................................. passim

Heading 3003 .............................................................................................. passim

Heading 8479, HTSUS ........................................................................................... 5

Explanatory Notes to heading 2309, HTSUS ................................................. 1, 5, 6, 7

Explanatory Notes to heading 2941, HTSUS ........................................................... 8

Explanatory Notess to heading 2309, HTSUS ......................................................... 7

Explanatory Notess to heading 3003, HTSUS......................................................... 14

**Court Rules**

USCIT Rule 73.1 .................................................................................................... 6

**Other Authorities**

Veterinary, Merriam-Webster Online Dictionary
  www.merriam-webster.com/dictionary/veterinary (last visited Feb. 12, 2026).......................... 7

Mixture, Dictionary.com
  www.dictionary.cambridge.org/us/dictionary/english/mixture.................................... 3

Veterinary, Encylcopedia Britannica,
  www.britannica.com/dictionary/veterinary (last visited Feb 12, 2026)..................... 7

Excipient, Merriam-Webster Online Dictionary
  www.merriam-webster.com/dictionary/excipient  (last visited Feb 13, 2026) ........................ 15

HQ H325604 (Aug. 31, 2023) ............................................................................ 16

*Federal Practice and Procedure* § 6726 (interim ed.) ................................................. 6

## SUMMARY OF THE ARGUMENT

Zoetis claims the CTC Concentrate is classifiable in heading 2941, HTSUS, or, alternatively, heading 3003, HTSUS.  Zoetis's arguments, however, must fail.  The CTC Concentrate, as imported, consists of chlortetracycline, mycelial cake, microbial cells, residual nutrients, and other fermentation components, and metabolic products.  GRI 1 resolves the classification of the CTC Concentrate.  The CTC Concentrate is not classifiable as an "[a]ntibiotic" of heading 2941, HTSUS, because it contains impermissible "impurities" that Zoetis previously admitted were purposefully added or left in to render it suitable for use with animal feed.  Nor is it a "[m]edicament[]" of heading 3003, HTSUS, because, in its condition at importation, it does not consist of two or more constituents mixed together for therapeutic or prophylactic use, nor can it be used, in its condition as imported, therapeutically or prophylactically by itself.

Instead, the correct classification for the CTC Concentrate is under heading 2309, HTSUS, as a preparation of a kind used in animal feeding.  The Explanatory Notes to heading 2309, HTSUS, describe a product that is virtually identical to the CTC Concentrate.  Furthermore, the undisputed record evidence demonstrates that the CTC Concentrate is fungible with the goods that belong to the class or kind of goods principally used in animal feeding.  The Court should grant the Government's cross-motion for summary judgment and deny Zoetis's summary judgment motion.

## ARGUMENT

## I.    THE CTC CONCENTRATE IS CLASSIFIABLE IN HEADING 2309, HTSUS

In our moving brief, we established that the proper classification of the CTC Concentrate is achieved by application of GRI 1.  GRI 1 requires the classification of merchandise "according

to the terms of the headings and any relative section or chapter notes . . . ."  Here, the competing

HTSUS headings are 2309, 2941, and 3003, HTSUS.  Heading 2309, HTSUS, provides for

"[p]reparations of a kind used in animal feeding."  Heading 2941, HTSUS, provides for

"[a]ntibiotics."  Heading 3003, HTSUS, provides for "[m]edicaments (excluding goods of

heading 3003, 3005 or 3006) consisting of two or more constituents mixed together for

therapeutic or prophylactic uses, not put up in measured doses or in forms or packings for retail

sale: . . ."  Headings 2309, 2941, and 3003, HTSUS, are mutually exclusive.

      We established that the imported CTC Concentrate is properly classifiable in heading

2309, HTSUS, as a "preparation of a kind used in animal feeding," which is a principal use

provision.  *See United States v. Carborundum Co.*, 536 F.2d 373 (C.C.P.A. 1976)

(*Carborundum*).  In our moving brief, we established that the Explanatory Notes to heading

2309, HTSUS, precisely describe a product that is virtually identical to the CTC Concentrate, as

imported, as a preparation of a kind used in animal feeding.  We also presented a comprehensive

analysis of the *Carborundum* factors and demonstrated that the CTC Concentrate is fungible

with the goods within the class or kind of preparations principally used in animal feeding

covered by heading 2309, HTSUS.  *See* Def.'s Br. at 17-34.  In response, Zoetis advances a

myriad of unpersuasive arguments in favor of classification in headings 2941, and 3003, HTSUS.

Those arguments are predicated on erroneous statutory interpretations and misreadings of the

applicable Explanatory Notes.

### A.    The CTC Concentrate Falls Within The Class Or Kind of Goods Principally Used As Preparations In Animal Feeding

      In our moving brief, we presented a fulsome analysis of the *Carborundum* factors and

demonstrated that they weigh in favor of classification of the CTC Concentrate in heading 2309,

HTSUS.  Zoetis does not offer any counter analysis of the *Carborundum* factors.  Instead, Zoetis

initially seeks to narrow the scope of heading 2309, HTSUS, by arguing that it is a residual or "basket provision." Specifically, Zoetis argues that Note 1 to Chapter 23, HTSUS, restricts the scope of the heading to goods that are not classifiable in any other heading. Pl.'s Reply at 30. Zoetis further argues that "heading 2309 is intended to be a catchall provision for generic preparations obtained by processing vegetable or animal materials that are used in animal feed." *Id*. at 32. Zoetis's attempts to narrow the heading are futile because, as we explained in our moving brief, the CTC Concentrate can only be classified in heading 2309, HTSUS. But Zoetis's "basket provision" arguments are also wrong. Under Zoetis's interpretation, if the CTC Concentrate is classifiable in headings 2941 or 3003, HTSUS, it is automatically excluded from heading 2309, HTSUS. Zoetis's interpretation of Note 1 is incorrect.

Note 1 to Chapter 23 states:

> Heading 2309 includes products of a kind used in animal feeding, not elsewhere specified or included, obtained by processing vegetable or animal materials to such an extent that they have lost the essential characteristics of the original material, other than vegetable waste, vegetable residues and byproducts of such processing.

Properly construed, Note 1 directs that heading 2309, HTSUS, "includes" but is not limited to a specific subset of preparations for use in animal feeding, namely, those "*obtained by processing vegetable or animal materials to such an extent that they have lost the essential characteristics of the original material, other than vegetable waste, vegetable residues and byproducts of such processing.*" (emphasis added). The Explanatory Notes to 2309, HTSUS, confirm this interpretation of Note 1. That Explanatory Notes state:

> The heading includes products of a kind used in animal feeding, obtained by processing vegetable or animal materials to such an extent that they have lost the essential characteristics of the original material, for example, in the case of products obtained from vegetable materials, those which have been treated to such an extent that the characteristic cellular structure of the original

3

vegetable material is no longer recognisable under a microscope.

The Explanatory Notes make clear that heading 2309, HTSUS, "includes" products that are of a kind used in animal feeding that are the result of processing vegetable and animal materials so that the processing makes those materials no longer recognizable.  The Explanatory Notes further illustrate this guidance by providing an example of vegetable materials, that after processing, are no longer recognizable even under a microscope.  Notably, the Explanatory Notes do not state that heading 2309, HTSUS, is limited to only those products.

Zoetis's interpretation of Note 1 violates two fundamental rules of statutory construction: a statute must be construed so as to give effect to every word and statutes should be interpreted in a manner that does not produce absurd results.  *Vesser v. Off. of Pers. Mgmt.*, 29 F.3d 600, 605 (Fed. Cir. 1994) (It is a "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect."); *Haggar Co. v. Helvering*, 308 U.S. 389, 394, (1940) ("All statutes must be construed in the light of their purpose.  A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose.").  Zoetis inappropriately rewrites Note 1 by adding the limiting term "only" and does not give effect to the term "includes."  Note 1's use of the term "includes" is illustrative and expansive, not exhaustive.  *Zenith Elecs. Corp. v. United States*, 755 F. Supp. 397, 411 (Ct. Int'l Trade 1990), *aff'd*, 988 F.2d 1573 (Fed. Cir. 1993) ("In normal interpretation of contracts and statutes, the use of the term "includes" indicates that what follows is exemplary and not restrictive.")  Thus, Zoetis's construction of Note 1 improperly narrows the scope of heading 2309, HTSUS.

Furthermore, it is well-established that Congress "says in a statute what it means and means in a statute what it says there."  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254

(1992). Had Congress intended for heading 2309, HTSUS, to be a "basket" provision limited to "preparations obtained by processing vegetable or animal materials that are used in animal feed," then it would have expressed such limiting language in the text of the heading or in Note 1. *See, e.g,* heading 8479, HTSUS, is a basket provision that provides for "Machines and mechanical appliances having individual functions, not specified or included elsewhere."

Zoetis's incorrect interpretation of Note 1 would lead to the illogical result that antibiotic preparations used in animal feeding could never be classifiable in heading 2309, HTSUS, as antibiotics are not made by processing of "vegetable or animal materials." But the Explanatory Notes to heading 2309, HTSUS, make clear that the heading covers such preparations, including preparations that are indistinguishable from the CTC Concentrate.

**B.    The CTC Concentrate Is A Microingredient Used In A Premix And, As Such, Is Classifiable In Heading 2309, HTSUS.**

Zoetis argues that heading 2309, HTSUS, does not cover individual ingredients but rather compound compositions consisting of a number of substances. Specifically, Zoetis argues that the CTC Concentrate is not "any of the examples in heading 2309 ENs – not a complete feed, not supplementary feed, not premixes." Pl.'s Reply Br. at 26. As we explained in our moving brief, the CTC Concentrate is a preparation that consists of several substances, just like the antibiotic preparation exemplar product described in the Explanatory Notes to heading 2309, HTSUS. *See* Def's Br. at 19-20; *see also* Pl.'s Ex 2, Response No. 3.

Surprisingly, Zoetis tries to distance the CTC Concentrate from the exemplar product in the Explanatory Note to 2309, HTSUS, by arguing that the CTC Concentrate "does not contain a 'carrier' at importation." Pl.'s Reply Br. at 27. However, that argument is directly contradicted by Zoetis's own statements.[1]

---

[1] Zoetis's apparent contradictory positions do not create a material issue of fact.

Zoetis has admitted – several times - that, in its condition at importation, the CTC

Concentrate **includes** a carrier. Indeed, Zoetis's underlying protest describes the CTC

Concentrate as follows:

> In its imported condition, CTC Concentrate is functionally the antibiotic Chlortetracycline within a carrier media, i.e., a mycelial cake. *The carrier media serves as a delivery mechanism for the Chlortetracycline, similar to combining the antibiotic with excipients and starches to create a tablet if it was being provided to humans.*

*See* Docket No. 11, Rule 73.1 Documents (emphasis added).  Additionally, Zoetis's discovery

response describes the CTC Concentrate as:

> CTC Concentrate is essentially CTC – the only active ingredient – that includes mycelial cake *(which serves as the primary carrier medium)*, microbial cells, residual nutrients, other fermentation components, and metabolic products

*See* Pl.'s Ex. 2, Pl.'s Resp. to Interrog. No. 4 (emphasis added).  *See also* Docket No. 21-1, Am.

Compl. ¶ 9.

Zoetis cannot now disavow the positions that it took in its protest, the judicial admissions

in its complaint, and the admissions in its interrogatory responses.  *Wells Fargo Bank, N.A. v.*

*Mesh Suture, Inc.*, 31 F.4th 1300, 1313 (10th Cir. 2022) ("Judicial admissions include 'formal

concessions in the pleadings' and 'are 'not evidence at all but rather have the effect of

withdrawing a fact from contention.'") (quoting *Keller v. United States*, 58 F.3d 1194, 1198 n.8

(7th Cir. 1995) (quoting Michael H. Graham, *Federal Practice and Procedure* § 6726 (interim

ed.)).  Those statements and admissions confirm that the CTC Concentrate contains a "carrier" at

importation and, therefore, falls squarely within the description of the antibiotic preparation set

forth in the Explanatory Notes to heading 2309, HTSUS.

Zoetis also erroneously argues that the Government misinterpreted the exclusion for

"preparations for veterinary uses" set forth in the Explanatory Notes to heading 2309, HTSUS.

Pl.'s Reply Br. at 28. Specifically, Zoetis argues that we conflated the phrase "preparation for

veterinary uses" with "preparation for use by a veterinarian." *Id*. Without citing any authority,

Zoetis argues that the phrase "veterinary uses" covers products "intended to treat, control,

prevent, or manage disease or health in animals, irrespective of who ultimately administers

them." *Id*. However, the Government's interpretation is correct (*see* Def.'s Br. at 20), and

Zoetis's construction is not supported by the text of the exclusion or the law.

The Explanatory Notes to heading 2309, HTSUS, are very detailed and sets forth several

exclusions. The pertinent exclusion states:

> The preparations of this group should not, however, be confused
> with certain *preparations for veterinary uses*. The latter are
> generally identifiable by the medicinal nature and much higher
> concentration of the active substance, and are often put up in a
> different way.

Explanatory Notes to heading 2309, HTSUS. (emphasis added).

The Explanatory Notes do not contain a definition of the term "veterinary." However,

the dictionary definition of the term "veterinary" means "of, relating to, practicing, or being the

science and art of prevention, cure, or alleviation of disease and injury in animals and especially

domestic animals." *See* https://www.merriam-webster.com/dictionary/veterinary (last visited

Feb. 12, 2026). *See also* "veterinary: relating to the medical care and treatment of animals:

veterinary medicine." https://www.britannica.com/dictionary/veterinary (last visited Feb 12,

2026). Those definitions describe the professional field of veterinary medicine, and not a

product that can be administered by anyone. Thus, read in context, the exclusion "preparations

for veterinary uses" means preparations of a medical character. This interpretation is reinforced

by the Explanatory Notes to heading 2309, HTSUS, which states that "preparations for

veterinary uses" "are generally identifiable by the medicinal nature and much higher concentration of the active substance, and are often put up in a different way." The Government's construction of the exclusion is correct (*see* Def.'s Br. at 20), and the exclusion does not cover the imported CTC Concentrate.

## II.    THE CTC CONCENTRATE IS NOT CLASSIFIABLE IN HEADING 2941, HTSUS

Zoetis erroneously argues that the CTC Concentrate is either an "antibiotic with impurities [heading 2941] or a medicament mixture that does not have the antibiotic added solely to enhance the feeding aspect of the preparation [heading 3003]." Pl.'s Reply Br. at 3. Zoetis starts by acknowledging that the Explanatory Notes to heading 2941, HTSUS, provide that "[a]ntibiotic preparations of a kind used in animal feeds (e.g., dried and standardized complete mycelium)" are excluded from that heading. But Zoetis then argues that the Government has not produced any facts to support classification under 2309, HTSUS. *Id*. at 3. That is not accurate. We demonstrated both legally and factually, with ample record evidence, why the CTC Concentrate is properly classifiable in heading 2309, HTSUS. *See* Def.'s Br. at 17-34.

Zoetis next attempts to argue that the Explanatory Notes to heading 2941, HTSUS, only direct "standardized" antibiotic preparations to heading 2309, and thus, because the CTC Concentrate is a non-standardized ingredient, it falls outside the scope of the Explanatory Note. Pl.'s Reply Br. 3-4. Zoetis's reasoning is flawed. The Explanatory Note refers to "[a]ntibiotic preparations of a kind used in animal feeds (e.g., dried and standardized complete mycelium)." The "e.g." signals that the reference to "dried and standardized complete mycelium" in the parenthetical is but one an example, and not the only category of antibiotic preparations that are excluded by the Explanatory Note.

Zoetis also argues that "there is no dispute that the CTC Concentrate is an antibiotic and

that antibiotics are covered *eo nomine* by heading 2941." Pl.'s Reply Br. at 3. But that argument is not right either. The parties did not agree that "CTC Concentrate is an antibiotic." The parties agreed that "[t]he CTC Concentrate is an active pharmaceutical ingredient (API) which is composed of the antibiotic Chlortetracycline at a concentration of 23.8 to 24.7 percent." Docket No. 38, No. 6, Joint Statement of Undisputed Facts (JSUF). Furthermore, while heading 2941, HTSUS, provides for "antibiotics" *eo nomine*, the legal notes make clear that the heading does not cover every product containing an antibiotic.[2]

Chapter 29, Note 1(a) states that the headings of Chapter 29 "apply only" to "[s]eparately chemically defined organic compounds, whether or not containing impurities." However, not all "impurities" are permissible. Rather, the Explanatory Notes for Chapter 29, Note 1 make clear that impurities are not permitted if they "are deliberately left in the product with a view to rendering it particularly suitable for specific use rather than for general use." Explanatory Note to Chapter 29. The Explanatory Notes for Chapter 29, Note 1 states, in relevant part:

> As a general rule, this Chapter is restricted to separately chemically defined compounds, subject to the provisions of Note 1 to the Chapter.
>
> ******************
>
> Separately chemically defined compounds containing other substances deliberately added during or after their manufacture (including purification) are excluded from this Chapter.
>
> ******************
>
> The term "impurities" applies exclusively to substances whose presence in the single chemical compound results solely and directly from the manufacturing process (including purification). These substances may result from any of the factors involved in the process and are principally the following:
>
> (a)  Unconverted starting materials.

---

[2] GRI 1 directs that the terms of the tariff headings and legal notes are paramount.

(b)   Impurities present in the starting materials.

(c)   Reagents used in the manufacturing process (including purification).

(d)   By-products

*It should be noted, however, that such substances are not in all cases regarded as "impurities" permitted under Note 1(a). When such substances are deliberately left in the product with a view to rendering it particularly suitable for specific use rather than for general use, they are not regarded as permissible impurities…*

This chapter further includes, whether or not they contain impurities, mixtures of isomers of the same organic compound. This provision applies only to mixtures of compounds having the same chemical function (or functions) and which either coexist in their natural form or are obtained simultaneously in the course of the same synthesis…

Explanatory Note to Chapter 29 (emphasis added).

Here, there is no dispute that, at importation, the CTC Concentrate contains more than a "[S]eparately chemically defined organic compound"; rather, it also includes the leftover starting materials, the by-products from the fermentation process, and added calcium carbonate. *See* Note 1, Chapter 29. *See* Pl.'s Ex. 2, Interrog. Resp. No. 3. Zoetis seeks to sidestep this point by arguing that the "leftover starting material and by-products from the fermentation process" are permissible "impurities" for purposes of heading 2941, HTSUS. Zoetis further asserts that calcium carbonate is added as a stabilizer during the manufacturing process and is therefore not an "impurity." Pl.'s Reply Br. at 6 and 7. But Zoetis's own statements, judicial admissions, and evidentiary admissions belie its position. In its protest, Zoetis described the CTC Concentrate as follows:

In its imported condition, the CTC Concentrate is functionally the antibiotic Chlortetracycline within a carrier media, i.e., a mycelial cake. The carrier media serves as a delivery mechanism for the Chlortetracycline, similar to combining the antibiotic with excipients and starches to create a tablet if it was being provided to

humans. *The Chlortetracycline is mixed with the fermentation biomass and complexing agents that have the ability to compound with the Chlortetracycline at stable pH ranges and facilitates the post-importation processing and veterinary directed delivery to livestock.* In its imported condition, the CTC Concentrate is neither suitable as an animal feed, nor as a pure antibiotic. It is an intermediate mixture that requires further processing.

*See* Docket No. 11, Protest. (emphasis added).

Zoetis also explained:

In its imported condition, the CTC concentrate includes Chlortetracycline mixed with the fermentation biomass and complexing agents (i.e., mycelial cake) that have the ability to compound with the Chlortetracycline at stable pH ranges and facilitate post-importation processing.

Chlortetracycline is recognized as a tetracycline antibiotic. See, e.g., New York Ruling Letter ("NYRL") 840979 (May 18, 1989) (classifying Chlortetracycline under HTSUS subheading 2941.30.0000 which provides for "Antibiotics … tetracyclines and their derivatives; salts thereof"). *However, as the CTC Concentrate includes both the Chlortetracycline antibiotic and other additives at the time of importation, it is excluded from classification within HTSUS Chapter 29 and is more appropriately classified elsewhere.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*See* Docket No. 11, Protest. (emphasis added).

Zoetis's interrogatory response also describes the CTC Concentrate as:

CTC Concentrate is essentially CTC – the only active ingredient – that includes mycelial cake (which serves as the primary carrier medium), microbial cells, residual nutrients, other fermentation components, and metabolic products.

Pl.'s Interrogatory Resp No. 4 (emphasis added). *See also* Docket No. , Pl.'s Compl. at ¶ 9.

Thus, according to Zoetis's own statements, as imported, the CTC Concentrate contains

impermissible impurities and "additives." The "biomass carrier" or "mycelial cake" are

deliberately left in the product as they function as a delivery mechanism. Also, "complexing

11

agents" are added during the manufacturing process to facilitate post-importation processing for use in animal feed, a specific, intended use. The presence of "additives" or "complexing agents" renders the CTC Concentrate ineligible for classification in heading 2941, HTSUS.

Perhaps unsurprisingly, Zoetis previously conceded that the CTC Concentrate's ingredients precluded its classification under heading 2941 and affirmatively argued against its classification under that heading, stating: "as the CTC Concentrate includes both the Chlortetracycline antibiotic and other additives at the time of importation, it is excluded from classification within HTSUS Chapter 29 and is more appropriate classified elsewhere." Docket No. 11, Protest at 3.

## III. THE CTC CONCENTRATE IS NOT CLASSIFIABLE IN HEADING 3003, HTSUS.

As an initial matter, headings 2941 and 3003, HTSUS, are mutually exclusive. Heading 3003, HTSUS, covers:

> Medicaments (excluding goods of heading 3003, 3005 or 3006) consisting of two or more constituents mixed together for therapeutic or prophylactic uses, not put up in measured doses or in forms or packings for retail sale:

Note 3 to Chapter 30 provides a list of "unmixed" products and states:

> 3.    For the purposes of headings 3003 . . . the following are to be treated –
>
> (a).    As unmixed products:
>
> (2) All goods of chapter 28 or 29 . . .

Note 3 to Chapter 30. The Note makes clear that goods classified in Chapter 29 are considered "unmixed" and therefore not classifiable in heading 3003, HTSUS. *See also Janssen Ortho LLC v. United States*, 425 F. Supp. 3d 1352, 1363 (Ct. Int'l Trade 2020) (construing Explanatory Note

to Chapter 30). Thus, an imported good, for purposes of classification in headings 2941 and 3003, HTSUS, cannot be both mixed and unmixed.

Curiously, in its brief, Zoetis expends considerable effort arguing that our acknowledgment that the CTC Concentrate is a "preparation" amounts to a concession that the good is a "mixture" for purposes of classification in heading 3003, HTSUS.[3] Pl.'s Reply Br. 9-12. However, that is not the test for classification. Neither heading 2309 nor heading 3003, HTSUS, contain the term "mixture." This is because, as we explained in our moving brief, the criteria for classification in heading 3003, HTSUS, is not whether a good is a mixture but rather whether it consists of "two or more constituents which have been mixed together for therapeutic or prophylactic uses." The CTC Concentrate does not meet that criteria because it is just one constituent, and while it comes ready as a preparation of a kind used in animal feeding at the time of its importation, it cannot be put to any potential therapeutic or prophylactic uses until it is mixed with other substances. *See* Pl.'s Ex. 2, Interrog. Resp. No. 3.

Zoetis further argues that the CTC Concentrate itself represents multiple "constituents," in that it contains different "components" such as chlortetracycline and calcium carbonate. *See* Pl.'s Reply Br. at 12 (explaining the definition of "components" and citing *Austin Chem., Inc. v. United States*, 659 F. Supp. 229, 233 (Ct. Int'l Trade 1987) (citing Hackh's Chemical Dictionary (4th ed. 1969)), *aff'd* 835 F.2d 1423 (Fed. Cir. 1987)). Zoetis wrongly conflates the term "constituents" with "components," resulting in the improper expansion of the scope of heading 3003, HTSUS.

---

[3] A "mixture" is "a substance made from a combination of different substances, or any combination of different things." *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/mixture (last accessed Feb. 12, 2026).

GRI 1 directs that the terms of the tariff headings and legal notes are paramount.  The statutory cannon *noscitur a sociis* is a legal principle meaning "it is known by its associates." This cannon holds that the meaning of an unclear word or phrase should be determined by considering the specific words and context immediately surrounding it.  *Jing Mei Automotive (USA) v. United States*, 682 F. Supp. 3d 1354, 1381 (Ct. Int'l Trade 2023).  "In accordance with the canon of *nocitur a sociis*, '[i]n order to ascertain the meaning of any word or phrase that is ambiguous or susceptible to more than one meaning, the court may properly resort to the other words with which the ambiguous word is associated in the statute.'"  *Jing Mei Automotive (USA)*, 681 F. Supp. at 1381 (citing *Jewalpak Corp. v United States*, 97 F. Supp. 2d 1192, 1196 (Ct. Int'l Trade 2000)).  Heading 3003, HTUS, covers "[m]edicaments consisting of two or more constituents mixed together for therapeutic or prophylactic uses."  The term "constituents" must be interpreted by the words surrounding it, which are "medicament" and "therapeutic or prophylactic uses."  Thus, "constituents" cannot mean any mere "component" of a mixed product.  The term must refer to substances that perform or contribute to the therapeutic or prophylactic use of the medicament.  Here, the calcium carbonate was added to the fermentation "broth" to facilitate post-importation processing, and not for any therapeutic or prophylactic uses.  Therefore, it is not a "constituent" for purposes of heading 3003, HTSUS.  Indeed, the CTC Concentrate, by itself, is not capable of any therapeutic or prophylactic use at the time of importation; it must first be combined with other constituents.  *See* Docket No. 59-13, Pl.'s Resp. to Def.'s Statement of Additional Undisputed Material Facts, Nos. 3, 7, and 11.  Merchandise is classified in its condition as imported.  *United States v. Citroen*, 223 U.S. 407 (1912).

The Explanatory Notes to heading 3003, HTSUS, support this interpretation.  Indeed, Note (2) of the Explanatory Notes to heading 3003, HTSUS, state that "preparations containing a

*single pharmaceutical substance together with an excipient, sweetening agent, agglomerating agent, support, etc. are included in this heading*." (emphasis added).  An imported good containing only a single pharmaceutical substance is only classifiable in heading 3003, HTSUS, if it also contains items such as excipients and sweetening agents.[4]  The implication is that those items serve a pharmaceutical function in the preparation.  Here, the CTC Concentrate contains a single pharmaceutical substance but does not contain an excipient or other constituent that would make it suitable for therapeutic or prophylactic use.  Indeed, the excipient is added after importation.  *See* Ex. 5, Dep. Tr. at 46:14-24.  Accordingly, the CTC Concentrate cannot be classified in heading 3003, HTSUS.

## IV.    THE CTC CONCENTRATE IS PROPERLY CLASSIFIABLE IN SUBHEADING 2309.90.95, HTSUS.

"Once the court determines the appropriate heading, the court applies GRI 6 to determine the appropriate subheading."  *StarKist Co. v. United States*, 29 F.4th 1359, 1361 (Fed. Cir. 2022) (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)).  The CTC Concentrate falls squarely within subheading 2309.90.95, HTSUS, which covers "Preparations of a kind used in animal feeding: Other: Other."  The CTC Concentrate is not a "mixed feed or mixed-feed ingredient, as those terms are used in Additional U.S Note 1 to Chapter 23, HTSUS." *See* JSUF ¶ 16.  Nor is the subject merchandise a preparation "with a basis of B12" of subheading 2309.90.70, requiring classification under subheading 2309.90.95 ("Other.")

## V.    IN THIS *DE NOVO* ACTION, THE COURT IS NOT BOUND BY CBP'S ADMINISTRTIVE RULINGS, WCO DOCUMENTS, OR RECENT AMENDMENTS TO THE EXPLANATORY NOTES

In an effort to salvage its classification claim under heading 3003, HTSUS, Zoetis argues

---

[4] An "excipient" is "usually inert substance (such as gum arabic or starch) that forms a vehicle (as for a drug).  *See* https://www.merriam-webster.com/dictionary/excipient  (last visited Feb 13, 2026).

that the Court should consider a recent compendium of World Customs Organization (WCO) classification decisions and recent amendments to the Explanatory Notes.  Pl.'s Reply Br. 19-24. The skeletal WCO decisions and amendments to the Explanatory Notes, made well after the importation of the merchandise, should not be afforded any weight.

In determining the correct classification of an imported good, this Court has an obligation "to reach a correct result."  *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). That determination is "upon the basis of the record made before the court."  28 U.S.C. § 2640. When determining the proper tariff classification of imported merchandise, the Court must "find the correct result," either independently or by comparison of competing HTSUS headings proposed by the parties.  *Jarvis Clark Co.*,733 F.2d at 878.  *See also Kent Displays, Inc. v. United States*, 698 F. Supp. 3d 1339, 1349 (Ct. Int'l Trade 2024) ("Given the Court's obligation to reach the correct result, other chapters of the HTSUS must also be considered, regardless of whether they were submitted by the parties").

Here, the parties have presented the Court with a fulsome legal analysis of the competing tariff provisions and a fully developed record sufficient for the Court to reach the correct classification for the CTC Concentrate.  The WCO decisions are not persuasive.  They involve a product that is materially different from the CTC Concentrate and contain a cursory description of the product at issue.  Moreover, the WCO decisions were not rendered within the framework of American tariff jurisprudence and therefore should not be afforded any weight.

Zoetis also continues to argue that CBP administrative ruling letter HQ H325604 (Aug. 31, 2023) should be given deference.  Pl.'s Br. Reply at 34-36.  This Court is not bound by CBP's administrative rulings or obligated to afford them deference.  28 U.S.C. § 2640; *Lutron Elec. Co., Inc. v. United States*, Court No. 22-00264, Order on Motion to Compel, Docket No. 37

(" . . .Customs ruling letters do not bind the court here. It is "the court's duty to find the *correct* result, by whatever procedure is best suited to the case at hand.") (quoting *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original)); *Skaraborg Inv. USA, Inc. v. United States*, 22 C.I.T. 413, 417 (1998) ("Customs rulings are not binding on the Court.").  Rather, the Court decides the classification question *de novo* and can order all appropriate relief.  28 U.S.C. § 2643.

Based on the foregoing, the CTC Concentrate is properly classifiable under subheading 2309.90.95, HTSUS.

## CONCLUSION

For these reasons, the Court should grant the Government's cross-motion for summary judgment, deny Zoetis's motion for summary judgment, and enter judgment in the Government's favor.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Marcella Powell
*Of counsel*:                                   MARCELLA POWELL
MICHAEL A. ANDERSON                             Senior Trial Counsel
Office of the Assistant Chief Counsel           Department of Justice, Civil Division
International Trade Litigation                   Commercial Litigation Branch
U.S. Customs and Border Protection              26 Federal Plaza – Suite 346
                                                New York, New York 10278
                                                (212) 264-9230
Dated: February 13, 2026                        *Attorneys for Defendant*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: JOSEPH A. LAROSKI, JR., JUDGE

_____
                                                :
ZOETIS SERVICES, LLC,                           :
                                                :
                      Plaintiff,                :
                                                :
            v.                                   :       Court No. 22-00056
                                                :
UNITED STATES,                                   :
                                                :
                      Defendant.                :
_____           :


## CERTIFICATE OF COMPLIANCE

I, Marcella Powell, an attorney in the Office of the Assistant Attorney General, Civil

Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for

the foregoing brief, relying upon the word count feature of the word processing program used to

prepare the brief, certify that this brief complies with the word count limitation under the Court's

standard chambers procedures, and contains 4,989 words.

/s/ Marcella Powell
MARCELLA POWELL